Karl Williams v. State

(comment: 1) 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-175-CR

KARL WILLIAMS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

I.  Introduction

Appellant Karl Williams entered an open plea of guilty to the offense of sexual assault and a plea of not true to an enhancement allegation.  After finding Williams guilty of sexual assault, the trial court ultimately found the State’s enhancement allegation to be true and sentenced Williams to forty years’ confinement.  In five points, Williams argues that the trial court erred by granting the State’s oral, unsworn motion for continuance, by admitting a probable cause affidavit during the punishment phase of the trial, and by overruling his objections that the State’s notices of intent to enhance punishment and intent to introduce extraneous offenses were untimely filed. We will affirm.

II.  Procedural Background

Williams’s case was set for trial on March 18, 2004.  The day before, on March 17, 2004, the State provided Williams with notice of its intent to enhance his punishment.  The trial court called Williams’s case for trial on March 18
th
, and the State requested a continuance; the defense announced ready and opposed the State’s request for a continuance.  The trial court granted a continuance, and later that same day (March 18
th
) the State filed, and provided Williams with, notice of its intent to offer extraneous offenses.

Williams’s case was reset for seven days later, on March 25, 2004, and proceeded to trial on that date.  Counsel for Williams argued that the State’s notice of intent to offer extraneous offenses and notice of intent to enhance punishment were untimely.  He asserted that the State should be precluded from offering evidence of any extraneous offenses and should be barred from enhancing Williams’s punishment.  The trial court overruled both of Williams’s objections, and Williams entered an open plea of guilty.

During the punishment phase of the trial, an investigator for Denton County testified that fingerprints he had taken from Williams matched fingerprints in a penitentiary packet offered by the State.  The trial court also admitted, over Williams’s objection, the probable cause affidavit supporting Williams’s arrest warrant in the current case.  After the State rested, Williams’s wife testified that Williams is a good husband, that he works hard, and that he supports five people.  She did admit, however, that she was not familiar with the details of the charged offense. 

The trial court found the enhancement allegation to be true and sentenced Williams to forty years’ confinement. 

III.  Motion For Continuance

In his first point, Williams argues that the trial court erred by granting the State’s oral motion for continuance because it was based upon insufficient cause and was not in writing.  The State maintains that the trial court acted within its discretion by granting the State’s motion for continuance. 

It is well settled that a criminal action may be continued on the written motion of the State or of the defendant, so long as sufficient cause is shown.  
See 
Tex. Code Crim. Proc. Ann.
 art. 29.03 (Vernon 1989).  The court of criminal appeals has explained, however, that a trial court also possesses discretion to grant an oral motion for continuance on equitable grounds.  
See Darty v. State
, 149 Tex. Crim. 256, 193 S.W.2d 195, 195 (1946); 
see also Hernandez v. State
, 492 S.W.2d 466, 467 (Tex. Crim. App. 1973). “[A] motion for continuance, based on equitable grounds rather than statutory grounds, is entirely within the sound discretion of the court, and will only call for reversal if it is shown that the court clearly abused its discretion.”  
Alvarado v. State
, 818 S.W.2d 100, 103 (Tex. App.—San Antonio 1991, no pet.).  Thus, the granting or denying of a motion for continuance, equitable or otherwise, is within the discretion of the trial court and will not be reversed on appeal unless it is shown that the court abused its discretion.  
See Janecka v. State
, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 825 (1997).  An appellant must show that he was actually prejudiced by the trial court’s decision to grant the continuance.  
Vasquez v. State
, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002).
(footnote: 1)
 Here, after the State made its oral motion for continuance, counsel for Williams argued that his client would be prejudiced by the granting of the continuance.  Williams argued that, because the State had provided him with notice of its intent to enhance Williams’s punishment just one day earlier, the continuance had the effect of curing the untimely notice.  The State responded that the timeliness of its notice of intent to enhance punishment was not relevant to whether the continuance was granted.  The State argued that it was “not prepared to go forward” and that “the only purpose [for the continuance was] so that justice could be done properly.”  The State also pointed out that this was its first request for a continuance. 

Williams failed to articulate any 
specific
 prejudice arising from the trial court’s granting of the continuance.  Williams was set to enter an open plea of guilty to the court.  There is no evidence that the typical prejudices, usually associated with the denial of a motion for continuance—inadequate trial  preparation time, unfair surprise, or inability to locate witnesses—existed here.  
See Dotson v. State
, 146 S.W.3d 285, 297 (Tex. App.—Fort Worth 2004, pet. ref’d).  The trial court apparently discounted Williams’s argument that the State was seeking a continuance for the purpose of curing the untimeliness of its notice of intent to enhance punishment.  Moreover, whether the inability to avoid or circumvent punishment enhancements is the type of “prejudice” meant to be avoided by the granting of a motion for continuance is questionable, and Williams provides no support for this assertion.  We hold that the trial court did not abuse its discretion by granting the State’s oral motion for continuance.  
See Alvarado
, 818 S.W.2d at 103 (holding trial court did not abuse its discretion by granting co-defendant’s motion for continuance based on equitable grounds).  We overrule Williams’s first point.

IV.  Probable Cause Affidavit

In his second and third points, Williams argues that the trial court erred by admitting a probable cause affidavit during the punishment phase of the trial. Williams contends that the affidavit constituted hearsay and violated his Sixth Amendment right to confrontation.  The State maintains that any error resulting from the admission of the affidavit was harmless.

The trial court admitted State’s Exhibit 2—a probable cause affidavit supporting the warrant issued authorizing Williams’s arrest—at punishment just before the State rested.  After this, the trial court stated that it had reviewed Williams’s pre-sentence investigation report (PSI).  Without deciding whether it was error for the trial court to admit the affidavit, we hold that any possible error resulting from the admission of the affidavit was harmless because the affidavit contains facts identical to those found in the PSI, which was considered by the trial court without objection.  
See 
Tex. R. App. P.
 44.2(b); 
Tex. Code Crim. Proc. Ann.
 art. 42.12, § 9(c)(1) (Vernon Supp. 2004-05) (stating judge may inspect PSI if the defendant pleads guilty); 
Elder v. State
, 132 S.W.3d 20, 27 (Tex. App.—Fort Worth 2004, pet. ref’d) (reasoning inadmissible evidence rendered harmless if same or similar evidence introduced elsewhere without objection), 
cert. denied
, 125 S. Ct. 1645 (2005).  
The facts in the PSI are cumulative of those in the affidavit, and, moreover, are the very facts of the offense to which Williams pleaded guilty.  We overrule Williams’s second and third points.

V.  Timeliness Of Notices

In his fourth and fifth points, Williams argues that the State’s notice of intent to enhance punishment and notice of intent to use extraneous offenses were not timely.

A.  Notice of Intent to Enhance Punishment

The State filed its notice of intent to enhance punishment on March 17, 2004.  Williams entered his open plea of guilty on March 25, 2004, and the punishment phase began that same day.  Thus, Williams received the State’s notice eight days before he entered his plea.

An accused is entitled to notice of the State’s intent to use prior convictions for enhancement purposes.  
See Hollins v. State
, 571 S.W.2d 873, 876 (Tex. Crim. App. 1978).  A proper notice of intent to enhance punishment must be given in a timely manner, but it need not be pled in the indictment itself to be considered proper notice, so long as it is pleaded “in some form” prior to trial.  
Brooks v. State
, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997); 
Hudson v. State
, 145 S.W.3d 323, 326 (Tex. App.—Fort Worth 2004, pet. ref’d); 
see also McNatt v. State
, 152 S.W.3d 645, 652 (Tex. App.—Texarkana 2004, pet. filed) (listing requirements of proper notice of intent to enhance punishment).  Here, we are concerned with the requirement that the notice be timely.

Notice is presumptively reasonable if given at least ten days before trial.  
Accord
 
Tex. Code Crim. Proc. Ann.
 art. 1.051(e) (Vernon 2005) (providing that appointed counsel is entitled to ten days to prepare for proceeding), art. 28.10(a) (Vernon 1989) (providing that, after notice and upon request, a defendant is allowed not less than ten days to respond to an amended indictment or information);
 see also Hudson
, 145 S.W.3d at 326; 
Fairrow v. State
, 112 S.W.3d 288, 294-95 (Tex. App.—Dallas 2003, no pet.); 
Sears v. State
, 91 S.W.3d 451, 455 (Tex. App.—Beaumont 2002, no pet.).  In 
Hudson
, we explained that while neither 
Fairrow 
nor 
Sears 
suggested a limited, certain time frame within which notice must be given to be timely, notice is presumptively “reasonable” if given at least ten days before trial.  
See Hudson
, 145 S.W.3d at 326.
  While ten days’ notice is 
presumptively 
reasonable, the issue to be resolved here is whether eight days’ notice is reasonable notice.  
See Barnes v. State
, 152 S.W.3d 144, 146 (Tex. App.—Dallas 2004, no pet.) (“Accordingly, we must determine whether the notice appellant received in this case was reasonable.”).

We do not, as the dissent contends, draw any distinction between the timeliness of notice of punishment enhancement provided by amending the indictment or provided in a different document.  We specifically recognize that it is the reasonableness of the notice, not the form of the notice, that controls.  
See, e.g., Hollins
, 571 S.W.2d at 876.  Nor does Article 28.10(a) of the code of criminal procedure, as the dissent also contends, automatically mandate that a defendant be given ten days’ notice of an amendment to an indictment.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 28.10(a).  That statute authorizes the State to amend an indictment, including by adding a punishment enhancement allegation,  “at any time before the date the trial on the merits commences,” but on the “request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant to respond” to the amendment. 
Id.  
Thus, the statutory ten-day period does not limit when the State may amend an indictment; it simply mandates, upon a defendant’s request, a ten-day response time.
(footnote: 2) 
 See id.
  Here, Williams did not request any length of time to respond to the enhancement allegations.  He did the opposite; he opposed the State’s motion for continuance which provided him with time to respond and he did not seek additional time to respond after his case was reset eight days later.  According to the dissent, although the State is entitled by statute to amend an indictment “at any time” before trial on the merits commences and is required to provide only “reasonable” notice of punishment enhancement allegations, if the State fails to provide notice of the punishment enhancement allegations ten days prior to the first trial setting, it is somehow barred forever from pleading enhancement allegations.  This is not a “diminishing salami” theory—so named by the dissent—it is bologna.      

A number of cases have held that the State’s notice of intent to enhance punishment is timely despite being given less than ten days before trial.  In 
Castilla v. State
, the State provided notice of intent to enhance punishment seven days before the guilt/innocence phase of trial.  No. 05-01-01776-CR, 2002 WL 31261741, at *4 (Tex. App.—Dallas Oct. 10, 2002, no pet.) (not designated for publication).  The 
Castilla 
court determined that this provided appellant with “ample notice” of the State’s intent to allege a prior conviction for enhancement purposes.  
Id
.  In 
Barnes
, seven days’ notice before trial was deemed reasonable.  
See Barnes
, 152 S.W.3d at 146.  There, the Dallas Court of Appeals refused to hold that the State’s motion to enhance punishment was equivalent to an amendment of the indictment, and therefore refused to apply an absolute ten-day notice period pursuant to article 28.10(a) of the Texas Code of Criminal Procedure.  
See id
.

Other cases have determined that less than ten days’ notice is unreasonable and untimely.  In 
Hudson
, we held that the State’s notice was untimely because it was provided six days before the punishment phase of the trial.  
See Hudson
, 145 S.W.3d 326.  We placed considerable emphasis on the fact that notice was given after the conclusion of the guilt/innocence phase.  
See id
.  In 
Fairrow
, the court held that notice given on the day of the trial was untimely.  
See Fairrow
, 112 S.W.3d at 295.  T
he Beaumont Court of Appeals in 
Sears 
determined that notice given the Friday before trial was set to begin on Monday was untimely.  
See Sears
, 91 S.W.3d at 455.  In 
Hackett v. State
, the Waco Court of Appeals held that notice given five days before trial was untimely.  160 S.W.3d 588, 590-91 (Tex. App.—Waco 2005, pet. filed) (not designated for publication).  The court held that a minimum of ten days’ notice must be given when the State files a separate pleading providing notice of its intent to enhance punishment because article 28.10(a) requires a minimum of ten days’ notice for an amendment to an indictment, and “[a]n enhancement notice which affects the range of punishment is a 
de facto 
amendment of the indictment.”  
Id. 
at 591.  Also, in 
Villescas v. State
, the El Paso Court of Appeals held that six days’ notice before trial began was not timely, reasoning that six days’ notice prior to trial was simply insufficient and that the record demonstrated that appellant was “surprised and unprepared in his defense with respect to the alleged prior convictions.”  No. 08-03-00131-CR, 2005 WL 327022, at *2-3 (Tex. App.—El Paso Feb. 10, 2005, pet. filed) (not designated for publication).

An analysis and application of the aforementioned cases leads us to conclude that the State provided reasonable notice of its intent to enhance Williams’s punishment.  The State provided notice eight days before Williams entered his open plea of guilty.  This is one day more than was provided in 
Barnes 
and 
Castilla
, and notice was determined to be reasonable in both of those cases.  
See Barnes
, 152 S.W.3d at 146; 
Castilla
, 2002 WL 31261741, at *4.  Unlike in 
Fairrow
, notice was not given on the day of the trial, and unlike in 
Sears
, notice was not given on a Friday before the trial began on the next Monday.  
See Fairrow
, 112 S.W.3d at 295; 
Sears
, 91 S.W.3d at 455.  Moreover, unlike 
Hudson
, in which notice was given after the guilt/innocence phase, notice was given here eight days before Williams entered his plea of guilty and the trial court proceeded to punishment.  
Hudson
, 145 S.W.3d 326.  And unlike 
Villescas
, there is no evidence of surprise or unpreparedness resulting from the State’s intent to enhance punishment. 
 
See Villescas
, 2005 WL 327022, at *3.  Furthermore, unlike the Waco Court of Appeals in 
Hackett
, we have not previously held that a separate enhancement notice that could affect punishment is a “de facto” amendment to the indictment requiring a minimum of ten days’ notice in compliance with article 28.10(a).  
See Hackett
, 160 S.W.3d at 591.

We also look to the underlying purpose of the notice sufficiency rule.  The court of criminal appeals has stated, “The accused is entitled to a description of the judgment of former conviction that will enable him to find the record and make preparation for a trial of the question whether he is the convict named therein.”  
Hollins
, 571 S.W.2d at 875.  Sufficient notice makes the accused aware “that a greater penalty is to be sought than for a first offense, and to enable him to take issue thereon, and if possible show there is a mistake in identity, or that there was no final former conviction or the like.”  
See id
. at 876; 
see also Holt v. State
, 899 S.W.2d 22, 24 (Tex. App.—Tyler 1995, no pet.) (reasoning that “the purpose of enhancement allegations in the indictment is to give the defendant notice of the earlier convictions so that he can prepare his defense”); 
Earl v. State
, 870 S.W.2d 669, 671 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (same).

Here, counsel for Williams made it clear on March 18, 2004 that his client opposed the granting of the State’s oral motion for continuance.  He stated that the open plea had been set “for probably about three to four weeks right now.” Despite the State’s notice of intent to enhance punishment, Williams did not request additional time to respond to the enhancement allegation.  He instead freely and voluntarily entered his open plea of guilty eight days later on March 25, 2004.  In terms of punishment, the State presented compelling evidence that Williams had a previous felony conviction, and he was afforded the opportunity to rebut that evidence.  No surprise or lack of preparation is reflected in the record.  Just before entering his plea, while being questioned by his attorney, Williams stated, “I feel that my punishment would be better from the Judge.  I don’t want the DA to assess anything.  So, no, I won’t plea bargain or nothing.  I’ll take whatever the Judge gives me, if it’s life or five years or whatever, I’ll take her judgment.” 

We hold that the State provided reasonable notice to Williams of its intent to enhance his punishment.  Williams did not request any additional time to respond to the enhancement allegations.  We overrule Williams’s fourth point. 
B.  
Notice of Intent to Use Extraneous Offenses

In his fifth point, Williams argues that the State failed to give timely notice of its intent to use extraneous offenses at the punishment phase.  The State contends that any error by the court in overruling Williams’s objection to the timeliness of the notice was harmless because the State did not offer any evidence of extraneous offenses at the punishment phase. 

During the guilt/innocence phase, the State offered and the trial court admitted Williams’s signed judicial confession.  The State then rested; it did not offer any evidence of extraneous offenses.  During the punishment phase, the State introduced and the trial court admitted the probable cause affidavit and a pen packet in order to prove up the enhancement allegation.  The State did not offer any evidence, other than the prior conviction alleged in the enhancement allegation, of extraneous offenses.  Assuming that it was error to overrule Williams’s objection to the timeliness of the State’s notice of intent to offer extraneous offenses, any error was harmless because the trial court did not admit evidence of Williams’s other crimes, wrongs, or acts.  
See 
Tex. R. App. P.
 44.2(b).  We overrule Williams’s fifth point.

VI.  Conclusion

Having overruled all five of Williams’s points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:
 August 18, 2005

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-175-CR

KARL WILLIAMS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 16TH
 DISTRICT COURT OF DENTON COUNTY

------------

DISSENTING OPINION

------------

Because I see the thoughtful majority opinion and those it relies on as nudging criminal law down the slippery slope of gamesmanship decried in civil law, I must respectfully dissent.  

Essentially, the majority notes that if the State provides the enhancement notice by adding it to the bottom of the indictment, a defendant is entitled to ten days’ notice unless he does not complain about the lack thereof.
(footnote: 1)  If, however, the State writes the same words on a separate piece of paper, seven or eight days’ notice is ample, even over a defendant’s objection that the vehicle allowing the shorter notice, that is, in this case the trial court’s ruling granting the State’s oral motion for continuance, prejudiced his case. 

Enhancement allegations are not mere footnotes to a criminal case.  Enhancement allegations implicate due process considerations regardless of how the State presents the allegations.
(footnote: 2)  Prior convictions can elevate a misdemeanor to a felony; for example, they are elements of the offense and, without dispute, must be pled in the indictment in felony cases of DWI,
(footnote: 3) theft,
(footnote: 4) and family violence assault.
(footnote: 5)
 But prior convictions used as punishment enhancements can have the same effects on the liberty of the accused as those that are elements of the offense.  Consider the following hypothetical situation.  During the first semester of their junior year of high school, five seventeen-year-old buddies drank a few beers and decided to move ten calves from the new high school principal’s pasture into one of their uncle’s pastures as a prank.  They got caught after being stopped on the highway by a deputy sheriff for suspicion of DWI.  After a speedy jury trial, the five boys were found guilty of third-degree felony theft,
(footnote: 6) and the trial court sentenced them to two years’ confinement in the Institutional Division of the Texas Department of Criminal Justice.
(footnote: 7)  The boys earned good conduct time during their confinement, completed their G.E.D.s, applied to and were accepted by various universities in the State of Texas, and, after serving about eighteen months of their sentences, were released from prison in the spring, a couple of weeks before their former classmates’ graduation.  The school board of their former high school passed a resolution to allow the five to walk across the stage with their former classmates.  On the day of graduation, the principal coincidentally celebrated his sixtieth birthday.

Five years to the day later, the buddies, who had all graduated from college with honors, accepted respectable jobs, married and started their families, reunited at their high school reunion.  They drank a few beers and reminisced.  The next day, the now sixty-five-year-old principal discovered that ten of his emus were missing.  A week later, the emus were discovered in the adjoining pasture, owned by the sheriff.

Suspicion focused on the five buddies, and even though the bottom had fallen out of the market for emus, the grand jury indicted the five young men for second-degree felony theft.
(footnote: 8)
 On a Thursday afternoon at 4:30 p.m., eight days before the initial trial setting, the prosecutor faxed a notice of enhancement to each defense lawyer on the case, indicating that if convicted, each defendant’s punishment would be enhanced because of his prior conviction for stealing the calves.  Each legal assistant of each lawyer dutifully placed each notice of enhancement in each lawyer’s chair.  Meanwhile, the lawyers, all board-certified, were attending and speaking at the annual TCDLA conference.  They returned to their respective homes in their respective cities late Sunday night.  After making the rounds at their respective district courthouses on Monday morning, they returned to their offices after lunch and found the documents in their chairs.  Three-and-a-half days before trial, the lawyers discovered that their twenty-three-year-old clients were facing life imprisonment.
(footnote: 9)  The trial court denied their timely joint oral motion for continuance.  

How can an appellate court claim, without winking at due process guarantees of the law, that a criminal defendant whose punishment may be so increased is not entitled to the same preparation time as the defendant who is given the same notice on a different piece of paper?  There exists a doctrine called the salami theory:  You may slice the salami often, but if you slice it thin each time, no one notices until the salami is mostly or entirely gone.
(footnote: 10)  

In Texas, it is well-settled that 

the purpose of an indictment is to give the defendant notice of the specific offense with which he is charged and to enable the court, upon conviction, to pronounce the proper judgment, and to enable the accused to plead the judgment that may be given upon it in bar of any further prosecution for the same offense.
(footnote: 11)  

Included in the notice requirement are the elements of the offense and the degree of the offense that establishes jurisdiction and the range of punishment.
(footnote: 12)  Historically, the pleadings necessary to enhance the range of punishment were contained in the indictment.
(footnote: 13)  When the State failed to include the enhancement pleadings in the indictment in 
Brooks
, the Texas Court of Criminal Appeals held that, although the State must plead the enhancement allegations, the pleadings do not have to appear in the indictment:
(footnote: 14)
 When 
Long
 was decided, indictments were the only pleadings of the State.  The 
Long
 court was concerned that failing to include enhancements in the indictment “would, in effect, do away with criminal pleadings.”  Further, when 
Long
 was decided, the law required the State to plead “whatever matter affects the degree or kind of punishment.”  By contrast, statute now permits the State to have other pleadings, and 
Sharp
 eliminated the requirement that an indictment plead punishment issues.  
Moore
 held that prior convictions used for enhancement must be pled but did not categorically say that the pleading used must be an indictment.  
Sigler
 had nothing to do with whether enhancements must be pled but held that such enhancements do not implicate double jeopardy concerns.  In fact, a reading of 
Sigler
 indicates that 
Patterson
 apparently cited it as adverse authority on whether enhancements should be included in an indictment because of 
Sigler's
 holding that enhancements are not elements of the offense but historical facts relating to punishment. 

We note that the concurring opinion in 
Patterson
 also maintained that enhancement allegations must be contained in an indictment and cited four additional cases in support of the idea that "proper notice" must be given.  
Coleman
 and 
Bevins
 held merely that enhancements need not be alleged with the same particularity as the primary offense in an indictment; they are not direct authority for the proposition that an indictment must refer to such enhancements.  
Parasco
 and 
Rogers
 did purport to hold that prior convictions used for enhancement must be alleged in the indictment.  But 
Parasco's
 holding was premised in part on the notion that the prior conviction in the particular case constituted an element of the offense.  This part of 
Parasco's
 holding was subsequently overruled.  Due to its holding that the prior conviction was an element of the offense, its alternative holding that enhancements must be alleged in the indictment could be viewed as mere dicta.  Moreover, 
Parasco
 cited no authority for this alternative holding and gave no reasoning other than to characterize alleging the enhancement offense in the indictment as “proper notice.”  And 
Rogers
 relied solely upon 
Parasco
 as authority for its holding.

The theme through all of these cases appears to be that a defendant is entitled to notice of prior convictions to be used for enhancement.  But alleging an enhancement in the indictment is not the only reasonable method of conveying such notice.  Even Judge Clinton, the author of the majority opinion in 
Patterson
, has subsequently maintained that enhancement paragraphs do not have to be in the indictment:

We simply observed in 
Patterson
 that the enhancement paragraphs must be pled somewhere, and, as the court of appeals points out, when the seminal case on enhancement paragraphs was decided, an indictment was the only pleading available to the State.  We did not necessarily indicate that an enhancement paragraph must be supported by a grand jury finding, and in fact we expressly held that a deadly weapon allegation need not emanate from a grand jury finding.  

Hence, we conclude that, to the extent prior cases have indicated that enhancement paragraphs must be pled in the indictment, those cases did not survive our decisions in 
Sharp
 and 
Rosales
.  As with deadly weapon findings, prior convictions used as enhancements must be pled in some form, but they need not be pled in the indictment—although it is permissible and perhaps preferable to do so.  In this case, the requisite notice was conveyed by the State's motion and the trial court's order.
(footnote: 15)
 

In his concurring opinion, Judge Mansfield contended,

[I]f the State intends effectively to increase the actual amount of prison time the accused will serve if he is convicted by seeking an affirmative deadly weapon finding, then the accused must be provided adequate advance notice so he can prepare a defense to the State's allegation that he used or exhibited a deadly weapon.  Indeed, failure to provide such adequate notice in advance may well violate the accused's due process and due course of law rights under the United States and Texas Constitutions.  Similarly, so that the accused is provided a reasonable opportunity to contest the validity of prior convictions the State intends to use for enhancement purposes, he must be given adequate advance notice of the State's intent to do so.
(footnote: 16)

Slowly, Texas courts, not the legislature, have decided that the indictment no longer must provide the requisite punishment notice and that some constantly changing number of days provides sufficient, yea ample notice of the State’s intent to increase exponentially the maximum punishment a jury or a judge may assess.
  
But notice must still be given and must be given in a timely manner.  The legislature has mandated that a defendant’s appointed counsel in a criminal case, even a probation revocation, be given ten days to prepare for trial.
(footnote: 17)  Is it proper for this court to circumvent the clear intent of the legislature by modifying the manner of providing notice?  That is, is it proper to use a loosening of the manner in which notice must be given to accomplish a shortening of trial preparation time?  In enacting article 1.051(e), the legislature has suggested that due process is satisfied by ten days’ notice.  Respectfully, I believe that the legislature should assume the responsibility of stating clearly how enhancement notices must be pled and how much time a defendant in a criminal case must be afforded to prepare to defend against enhancement allegations that can potentially elevate his maximum punishment from ten years’ incarceration to life imprisonment.
(footnote: 18)  The gradual erosion of the due process protections afforded by requiring timely notice of the allegations against which a defendant must defend should be addressed by the legislature. I would hold that the trial court abused its discretion by granting the State’s oral motion for continuance made on the day the case was set for trial because the prejudice that Appellant was required to show was obvious—his exposure increased fivefold, from twenty years to life.  I would further hold this abuse of discretion harmful under Texas Rule of Appellate Procedure 44.2(a) because I believe that Appellant’s right to due process was violated.
(footnote: 19)  Even under Texas Rule of Appellate Procedure 44.2(b), however, I would hold that the error was sufficiently harmful: Appellant’s sentence of forty years’ confinement is double the maximum amount of confinement he faced absent the trial court’s error.
(footnote: 20)
 Because I perceive the salami to have been sliced too often, although the cut has been thin each time, I must respectfully dissent from the majority opinion.

LEE ANN DAUPHINOT

JUSTICE

PUBLISH

DELIVERED: August 18, 2005

FOOTNOTES
1:
The 
denial
 of an oral motion for continuance preserves nothing for our review.  
Ricketts v. State.  
89 S.W.3d 312, 317 (Tex. App.—Fort Worth 2002, pet ref’d).  But here, Williams complains of the 
granting 
of the State’s oral motion for continuance.    

2:
The dissent—based on its erroneous construction of article 28.10(a) as a ten-day-notice requirement instead of a ten-days-to-respond requirement—characterizes the statutory ten days as “the whole salami” and construes shortening of the purported ten-day-notice requirement as slicing off pieces of the whole salami, resulting in a “diminishing salami.” 

1:
See
 majority op. at 8-9.

2:
See, e.g., Ex parte McAtee
, 586 S.W.2d 548, 550 (Tex. Crim. App.  1979); 
McNatt v. State
, 
152 S.W.3d 645, 653 (Tex. App.—Texarkana 2004, pet. filed); 
Sears v. State
, 91 S.W.3d 451, 455 (Tex. App.—Beaumont 2002, no pet.).

3:
Tex. Penal Code Ann.
 § 49.09(b)(2) (Vernon Supp. 2004-05); 
Gibson v. State
, 995 S.W.2d 693, 696 (Tex. Crim. App. 1999).  

4:
Tex. Penal Code Ann
 § 31.03(e)(4)(D) (Vernon Supp. 2004-05); 
Gant v. State
, 606 S.W.2d 867, 871 (Tex. Crim. App. [Panel Op.] 1980).

5:
Tex. Penal Code Ann.
 § 22.01(a)(1), (b)(2) (Vernon Supp. 2004-05); 
Sheppard v. State
, 5 S.W.3d 338, 340 (Tex. App.—Texarkana 1999, no pet.).

6:
See 
Tex. Penal Code Ann.
 § 31.03(a), (b), (e)(5) (providing that theft of ten or more head of “cattle, horses, or exotic livestock or exotic fowl” in one transaction is a third-degree felony).

7:
See id.
 § 12.34(a) (Vernon 2003).

8:
See id.
 § 31.03(f)(3) (upgrading the offense one level if the owner is an “elderly individual”); §31.01(10) (Vernon Supp. 2004-05) (referring to definition in section 22.04(c)); § 22.04(c) (Vernon 2003) (providing that an elderly person is “a person 65 years of age or older”); 
see also 
Tex. Agric. Code Ann.
 § 142.001(5) (Vernon 2004) (defining exotic fowl as “avian species that is not indigenous to this state”).

9:
See
 
Tex. Penal Code Ann.
 § 12.42(b) (Vernon Supp. 2004-05) (providing that “[i]f it is shown on the trial of a second-degree felony that the defendant has been once before convicted of a felony, on conviction he shall be punished for a first-degree felony”).

10:
See, e.g.,
 
Almota Farmers Elevator and Warehouse Co. v. United States,
 409 U.S. 470, 480, 93 S. Ct. 791, 797-98 (1973) (Powell and Douglas, JJ., concurring) (“[I]t would be unjust to allow the Government to use 'salami tactics' to reduce the amount of one property owner's compensation by first acquiring an adjoining piece of property or another interest in the same property from another property owner.”); 
 Hubler v. City of Corpus Christi
, 564 S.W.2d 816, 821 (Tex. Civ. App.—Corpus Christi 1978, writ ref’d n.r.e.) (“Plaintiff contends that by completing such projects in stages, the defendants are using the ‘old salami technique’ by gradually depriving him of his land without instituting condemnation proceedings or paying just compensation.”).

11:
Sledge v. State
, 953 S.W.2d 253, 263 (Tex. Crim. App. 1997); 
see also 
Tex. Code Crim. Proc. Ann.
 arts. 21.04,  21.11 (Vernon 1989) (defining the certainty required in an indictment).

12:
See, e.g, Few v. State
, 588 S.W.2d 578, 585 (Tex. Crim. App. [Panel Op.] 1979).

13:
Long v. State
, 36 Tex. 6, 10 (1871).   

14:
Brooks v. State
, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997).

15:
Id. 
at 33-34 (citations omitted).

16:
Id.
 at 34-35 (Mansfield, J., concurring).

17:
Tex. Code Crim. Proc. Ann.
 art. 1.051(e) (Vernon 2005) (providing that appointed counsel is entitled to ten days to prepare for a proceeding); 
see
 
Rojas v. State
, 943 S.W.2d 507, 511 (Tex. App.—Dallas 1997, no pet.) (holding that appointed counsel is entitled to ten days to prepare for probation revocation proceeding); 
see also Campbell v. State
, 456 S.W.2d 918, 920 n.3 (Tex. Crim. App. 1970) (holding that probationer is entitled to copy of revocation motion at least ten days before hearing).

18:
See
 
Tex. Penal Code Ann.
 § 12.42(d) (Vernon Supp. 2004-05) (providing the “three strikes” law).

19:
See
 
Tex. R. App. P.
 44.2(a).

20:
See
 
Tex. R. App. P.
 44.2(b).

COMMENTS AND ANNOTATIONS
Comment 1:
Majority by Justice Walker; Dissent by Justice Dauphinot