**AFFIRMED; Opinion Filed March 5, 2019**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-17-00750-CR**

**HENRY LEE FLETCHER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416--82292-2015**

# MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Nowell

Following a bench trial, Henry Lee Fletcher was convicted of aggravated sexual assault of an elderly or disabled person and sentenced to forty years' incarceration. In two issues on appeal, appellant argues the trial court erred by granting the State's motion for continuance and overruling his objection to the admission of a lab report into evidence. We affirm the trial court's judgment.

FACTUAL BACKGROUND

The complainant, A.P., was fourteen years old with intellectual disabilities. On the evening of June 27, 2015, A.P., who habitually left her home to walk in town alone, had been away from home for a few hours. A.P. testified that she was walking when she got into appellant's white car and they went to his house. Once inside his bedroom, appellant removed all of his and her clothing.

While on his bed, appellant "touched [her] private part" with his "private part."[1] Afterward, appellant drove A.P. to an area a "little ways" from her house and A.P. ran home because she was scared. When she arrived home, she told her mom what happened, and her parents contacted the police.

Police arrived at A.P.'s home and separately spoke to A.P. and her parents. Investigator Danny Stasik, a criminal investigator with the Collin County Sheriff's Office who specializes in crimes against children, took A.P. for a sexual assault exam. On the way to the hospital, A.P. told the police she could show them the house where she was taken. She directed them to appellant's home and identified his white vehicle in the driveway.

Dr. Matthew Cox performed a physical examination, including a SANE[2] exam, on A.P. at 2:42 a.m. on June 28, 2015. During the examination, he found injuries consistent with vaginal penetration. These types of injuries generally heal within two days, which meant the trauma to A.P. was recent. After collecting swabs from A.P.'s mouth, vaginal canal, and anal canal, Cox placed the swabs in a SANE box that he gave to Stasik.

After A.P. identified appellant in a photo lineup, Stasik obtained an arrest warrant for appellant and a search warrant for appellant's house. Appellant agreed to talk to the police after he was arrested. Initially he declared A.P. was never in his house, but subsequently admitted he took A.P. to his house and A.P. was in his bedroom. Appellant also admitted he could tell A.P. was disabled and guessed she was under the age of 18.

Chelsea Wingate, a forensic scientist with the Texas Department of Public Safety, performed the DNA analyses in this case. From the samples in the SANE kit, Wingate developed DNA profiles and compared them to known samples from A.P. and appellant. She concluded

---

[1] When asked to demonstrate which area of her body is her private part, A.P. pointed to her groin/crotch area.

[2] Cox testified SANE stands for sex assault nurse examiner.

appellant could not be excluded as a possible contributor to the DNA profiles. Wingate created a report showing her conclusions, which was admitted into evidence.

The trial court found appellant guilty of aggravated sexual assault of an elderly or disabled person and not guilty of indecency with a child by sexual contact. This appeal followed.

LAW & ANALYSIS

## A. Motion for Continuance

In his first issue, appellant asserts the trial court abused its discretion under article 29.13 of the Texas Code of Criminal Procedure and his constitutional rights by granting the State's motion for continuance after trial began. After the State read the indictment and appellant pleaded not guilty to both counts charged, the parties raised several "pretrial motions" with the court. Appellant filed a motion to suppress three days before trial (on the Friday preceding the Monday trial) seeking to suppress the warrant for the seizure of appellant's blood and saliva and the laboratory results derived from any analysis performed on his blood and saliva, including the results of DNA testing. The trial court granted the motion to suppress.

When trial resumed the following day, the State informed the trial court it initially appealed the court's ruling on the motion to suppress. However, after realizing jeopardy attached the previous day, the State withdrew its appeal. When the court asked whether both sides were ready to proceed with trial, the State made an oral motion for continuance. Noting its intention the motion to suppress be considered pretrial and representing the DNA evidence "is a very important piece of evidence," the State requested a continuance so it "may have the opportunity to try to remedy the situation essentially by obtaining a new search warrant and trying to obtain the evidence. That is the remedy that . . . would have been available to the State had we had the ability to appeal." Appellant stated he was prepared for trial and requested the court deny the motion based on his right to a speedy trial and "his right of due process and due course of law." Appellant

previously had not made a speedy-trial demand. The court took the motion under advisement. The following day, the court granted a recess for twenty days.[3]

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *Briggs v. State*, 560 S.W.3d 176, 184 (Tex. Crim. App. 2018). Abuse of discretion is a deferential standard of review requiring appellate courts to view the evidence in the light most favorable to the trial court's ruling. *Id.* The trial court abuses its discretion only when no reasonable view of the record could support its ruling. *Id.* "A trial court's ruling will be upheld if it is correct on any applicable legal theory, even if the trial court articulated an invalid basis." *Id.*

Appellant asserts the State did not meet its burden under article 29.13 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 29.13. After trial begins, the trial court may grant a continuance when, by some unexpected occurrence that could not reasonably have been anticipated, the applicant is so taken by surprise that a fair trial cannot be had. *Id.* The code of criminal procedure requires all motions for continuance to be "sworn to by a person having personal knowledge of the facts relied on for the continuance." *Id.* art. 29.08. Article 29.13 does not address or remove the requirement that a motion for continuance must be in writing. "A motion for continuance not in writing and not sworn preserves nothing for review." *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999); *Ricketts v. State*, 89 S.W.3d 312, 317 (Tex. App.—Fort Worth 2002, pets. ref'd); *see also Anderson v. State*, 301 S.W.3d 276, 278–81 (Tex. Crim. App. 2009) (concluding the court of appeals erred by applying a due-process exception to the motion-for-continuance preservation requirement and concluding that the "right to present a defense is subject to forfeiture.").

---

[3] The trial court stated it had not seen this type of request before. Likewise, when asked by a justice of this Court during appellate oral argument whether the procedure for granting the motion to suppress and giving the State a "do over is unusual," the State conceded it is unusual.

"[A] trial court also possesses discretion to grant an oral motion for continuance on equitable grounds." *Garreans v. State*, No. 05-06-00934-CR, 2008 WL 311002, at *4 (Tex. App.—Dallas Feb. 5, 2008, no pet.) (mem. op., not designated for publication) (citing *Williams v. State*, 172 S.W.3d 730, 733 (Tex. App.—Fort Worth 2005, pet. ref'd)); *see also May v. State*, No. 05-13-00438-CR, 2014 WL 4207149, at *3 (Tex. App.—Dallas Aug. 26, 2014, no pet.) (mem. op., not designated for publication) ("a trial court also possesses discretion to grant an oral motion for continuance on equitable grounds."). "A motion for continuance, based on equitable grounds rather than statutory grounds, is entirely within the discretion of the court, and will only call for reversal if it is shown that the court clearly abused its discretion." *Garreans*, 2008 WL 311002, at *4 (quoting *Williams*, 172 S.W.3d at 733). An appellant must show he was actually prejudiced by the trial court's decision to grant the continuance. *Id.*

Because the code of criminal procedure requires all motions for continuance made pursuant to article 29 be in writing and the State's motion was oral, we conclude the State's motion was not made pursuant to article 29.13. Therefore, we consider the trial court's ruling on equitable grounds. Appellant makes no argument that the trial court abused its discretion by granting the motion on equitable grounds. Appellant filed the motion to suppress only three days before trial. The parties and the trial court initially believed the motion was raised pre-trial, which would have given the State the right to appeal the trial court's decision under ordinary circumstances. However, once the State realized and informed the trial court that jeopardy attached, the trial court reached the decision to grant a short continuance to permit the State to seek another warrant. At the time of the continuance, the case against appellant had been pending for eighteen months and appellant was not incarcerated. The continuance was for twenty days.

Additionally, appellant did not show how a twenty-day delay prejudiced him. On appeal, appellant asserts he was "under tremendous anxiety and concern," which is not supported by the

record, and "had to submit his body to search on two occasions." Additionally, he argues a Texas Department of Public Safety laboratory worker who was involved in the processing of biological evidence in this case was no longer employed by DPS at the time of trial, and thus not available to testify. This argument was not presented to the trial court and there is no evidence that, but for the twenty-day delay, the DPS employee would have been available. Based on this record, we cannot conclude the trial court clearly abused its discretion by granting the State's equitable motion or that appellant showed he suffered harm because of the continuance.

In so far as appellant asserts the delay violated his right to speedy trial, appellant did not create a record to support this complaint. To preserve a speedy-trial claim for appellate review, a defendant must: (1) raise the claim before trial begins, (2) present evidence of the claim to the trial court, and (3) obtain a ruling after presentation of evidence of the claim. *Foster v. State*, No. 13-18-00051-CR, 2018 WL 6626728, at *3 (Tex. App.—Corpus Christi Dec. 19, 2018, no pet.) (mem. op., not designated for publication) (citing TEX. R. APP. P. 33.1; *Gonzales v. State*, 435 S.W.3d 801, 805-08 (Tex. Crim. App. 2014); *Henson v. State*, 407 S.W.3d 764, 768-69 (Tex. Crim. App. 2013); *Crocker v. State*, 441 S.W.3d 309, 311 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Dean v. State*, 995 S.W.2d 846, 850 (Tex. App.—Waco 1999, pet. ref'd)). There are four factors we consider when addressing a speedy-trial claim: (1) the length of delay; (2) the State's reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant because of the length of delay. *Balderas v. State*, 517 S.W.3d 756, 767–68 (Tex. Crim. App. 2016). These are known as the *Barker* factors. *See Barker v. Wingo,* 407 U.S. 514, 530 (1972). One of the reasons that a motion for speedy trial must be preserved at the trial court is to allow the trial court to develop the record sufficiently for a *Barker* analysis. *Henson*, 407 S.W.3d at 769. "At least two of the *Barker* factors (the reason for delay and the prejudice to the accused) are fact-specific inquiries and may not be readily apparent from the trial record. A requirement

that the appellant assert his complaint at the trial level enables the court to hold a hearing and develop this record so that the appellate courts may more accurately assess the claim." *Id.*

Appellant did not raise the speedy-trial claim before trial began; rather, he raised it after trial started and jeopardy attached. Additionally, appellant did not present evidence of the *Barker* factors supporting his speedy-trial claim to the trial court or otherwise develop a record to show the delay was prejudicial to him. We conclude appellant did not preserve his speedy-trial claim for appellate review.

We overrule appellant's first issue.

## B. Confrontation Clause

In his second issue, appellant argues the trial court erred by overruling his objection to the admission of State's Exhibit 32, Wingate's lab report, because it violated his rights under the Confrontation Clause. Jordan Foglietta, a lab analyst who did not testify at trial, performed a presumptive test to determine whether seminal fluid and sperm cells were present in the material obtained from the SANE kit, "cut a portion of the sample," and sent the cut portion of the sample for DNA analysis. Wingate performed the DNA analysis based on the sample she received from Foglietta. Wingate testified that if the sample had not contained seminal fluid or sperm cells or it lacked sufficient material to create a DNA profile, she would have identified those problems. Wingate testified:

> So what [Foglietta's] results tell us is how we're going to actually process the samples. Since semen was detected, we know that we now need to perform a different type of extraction because semen has been detected. My conclusions were based solely on the DNA results and not on the screening results.

Wingate was the sole author of the report admitted as State's Exhibit 32. After the trial court overruled appellant's objections, Wingate testified without objection about the contents of her report, including her conclusion that appellant could not be excluded as a possible contributor to the male profile on the vaginal and anal swabs.

–7–

Under the Confrontation Clause of the Sixth Amendment to the United States Constitution, "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Supreme Court interpreted this right to mean that "testimonial" evidence is inadmissible at trial unless the witness who made the testimonial statement either takes the stand to be cross-examined or is unavailable and the defendant had a prior opportunity to cross-examine him. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013). The Supreme Court has not precisely defined what constitutes a "testimonial" statement under *Crawford*. *See* 541 U.S. at 51 (describing "[v]arious formulations of this core class of 'testimonial' statements"). The Court has held that an analyst's certification prepared in connection with a criminal investigation or prosecution, including blood-alcohol concentration reports and reports listing the composition, quality, and weight of the narcotics at issue, are testimonial and cannot be admitted without satisfying the requirements of the Confrontation Clause. *See Bullcoming v. New Mexico*, 564 U.S. 647, 659–61 (2011); *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009). However, the Texas Court of Criminal Appeals held DNA profiles are non-testimonial. *Paredes v. State*, 462 S.W.3d 510, 519 (Tex. Crim. App. 2015).

The court of criminal appeals determined the admission of a lab report created solely by a non-testifying analyst, without calling that analyst to sponsor it, violates the Confrontation Clause. *Id.* at 517. "While the testifying expert can rely upon information from a non-testifying analyst, the testifying expert cannot act as a surrogate to introduce that information." *Id.* However, when an analyst "perform[s] the crucial analysis determining the DNA match and testifie[s] to her own conclusions," the testimony does not violate the Confrontation Clause. *Id.* at 518. "[W]hen the underlying lab analysis is not referred to or admitted into evidence, a testifying expert who independently analyzes raw DNA data may offer his own opinion concerning the comparison of

the DNA profiles; if subject to cross-examination, then the admission of that opinion does not violate the Confrontation Clause." *Dugar v. State*, No. 01-16-00908-CR, 2018 WL 2106893, at *6 (Tex. App.—Houston [1st Dist.] May 8, 2018, pet. ref'd) (citing *Garrett v. State*, 518 S.W.3d 546 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd)).

Appellant asserts Foglietta made "statements regarding the presence of seminal fluid and semen on the samples" and those statements were testimonial. If we accept for purposes of this appeal that Foglietta's actions were statements subject to a Confrontation Clause analysis, we conclude no testimonial evidence from Foglietta was admitted at trial. The record establishes Wingate performed the crucial analysis determining the DNA match and her report includes only her own conclusions based on work she performed. The report does not include any conclusions Foglietta may have reached. It is Wingate's conclusions based on her own independent analysis that linked appellant to A.P.'s assault, not Foglietta's. Wingate was not merely a testifying expert acting as a surrogate to introduce a non-testifying analyst's report. Because Wingate independently analyzed the raw DNA data submitted by Foglietta and her report offered only her own opinions concerning the DNA profile and she testified and was subject to cross-examination, the admission of her report does not violate the Confrontation Clause. We overrule appellant's second issue.

CONCLUSION

We affirm the trial court's judgment.

/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
170750F.U05

–9–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HENRY LEE FLETCHER, Appellant

No. 05-17-00750-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416--82292-2015.
Opinion delivered by Justice Nowell.
Justices Myers and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of March, 2019.