

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00063-CR

———————————————

WILLIAM MARK CRUMP, Appellant

V.

THE STATE OF TEXAS

———————————————

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. DC89-CR2022-0434-1

———————————————

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

A jury found William Mark Crump, appellant, guilty of aggravated sexual assault of a child and, after finding two enhancement paragraphs true, assessed his punishment at life imprisonment and a $10,000 fine. The trial court sentenced Crump in accordance with the jury's verdict.

On appeal, Crump argues in one issue that the trial court erred by designating an improper outcry witness under Article 38.072 of the Texas Code of Criminal Procedure and, in the process, admitting inadmissible hearsay or, alternatively, denying him his right to confrontation. Assuming, without deciding, that the trial court abused its discretion by designating the wrong person as the outcry witness and thereby improperly admitting hearsay, we nevertheless hold that the error was harmless and that Crump's right to confrontation was not violated. We overrule Crump's issue and affirm the trial court's judgment.

## I. Background

The complainant, who was nine years old at the time of trial, testified that when she was five, Crump sexually assaulted her.

Crump does not contest the evidentiary sufficiency. But Crump does contest some of the evidence that the trial court allowed the jury to hear. In addition to hearing the complainant's testimony, the jury heard Detective Matthew Bailey testify as the outcry witness under Article 38.072 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.072.

The trial court determined Detective Bailey's status as the outcry witness at a preliminary hearing. At this preliminary hearing, Detective Bailey acknowledged never having spoken with the complainant. Rather, he set up a forensic interview at Patsy's House, a local Child Advocacy Center. At Patsy's House, only the forensic interviewer (Mary Royal) and the complainant were in the same room together. From another room, Detective Bailey watched the interview live via a closed-circuit television. Detective Bailey conceded that the complainant had never made an outcry directly to him and had instead made an outcry to Royal. But Detective Bailey explained that Royal could not testify because she was dealing with medical issues.

At the preliminary hearing, Crump objected that the complainant had never made an outcry to Detective Bailey and that Detective Bailey thus did not qualify as the outcry witness under Article 38.072. Implicitly overruling Crump's objection, the trial court designated Detective Bailey as the outcry witness.

Later, when Detective Bailey testified before the jury, Crump renewed his objection. The trial court allowed the testimony and granted Crump a running objection.

## II. Discussion

Crump argues in one issue that the trial court erred by designating Detective Bailey as the outcry witness under Article 38.072 and, by doing so, admitting inadmissible hearsay and denying him his right to confrontation. For the reasons given below, we hold that Crump's confrontation rights were not violated, and

3

assuming the trial court erred by designating Detective Bailey as the outcry witness and admitting hearsay, we hold that any error was harmless.

## A.  No Confrontation-Right Violation

We address Crump's confrontation argument first and conclude that it has no merit. The hearsay statements at issue were the complainant's statements to Royal that Detective Bailey overheard. The witness that Crump wanted to confront was the complainant. Because she testified at trial, Crump's right to confrontation was not violated. *See Wells v. State*, 558 S.W.3d 661, 667 (Tex. App.—Fort Worth 2017, pet. ref'd); *Oliva v. State*, No. 13-15-00609-CR, 2017 WL 2608280, at *7 (Tex. App.—Corpus Christi–Edinburg June 15, 2017, no pet.) (mem. op., not designated for publication).

## B.  Outcry-Witness Designation and Hearsay

Article 38.072 creates a hearsay exception in certain child-sexual-offense prosecutions that permits the testimony of the first adult to whom the child made a sexual-abuse outcry. Tex. Code Crim. Proc. Ann. art. 38.072; *Koury v. State*, 684 S.W.3d 537, 545 (Tex. App.—Austin 2024, pet. ref'd).

When designating an outcry witness, the trial court has broad discretion. *Guzman v. State*, 591 S.W.3d 713, 722 (Tex. App.—Houston [1st Dist.] 2019, no pet.). Absent a clear abuse of discretion, we will not disturb the trial court's decision. *Id.* A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.*

4

Under Article 38.072, there can be only one outcry witness per event. *Gibson v. State*, 595 S.W.3d 321, 326 (Tex. App.—Austin 2020, no pet.). Hearsay testimony from more than one outcry witness is admissible under Article 38.072 only if the witnesses testify about different events. *Id.*

## 1. Abuse of Discretion

Here, the evidence is not disputed: the complainant never made an outcry to Detective Bailey but rather to Royal, the forensic examiner. Detective Bailey was an unobserved eavesdropper to that outcry.

Broadly speaking, we agree that Detective Bailey was an outcry witness, but whether he fell within the definition of an outcry witness under Article 38.072 is less clear. *See Rodriguez v. State*, 689 S.W.3d 386, 394 (Tex. App.—Corpus Christi–Edinburg 2024, pet. ref'd) (stating that if the child's recorded video is not admissible under Article 38.072, then admitting the testimony of someone who watched the video is not admissible either). For our purposes, because we ultimately conclude that any error was harmless, we will assume, without deciding, that the trial court abused its discretion by designating Detective Bailey as the outcry witness.

## 2. Harm

### a. Standard of Review

When a trial court errs by admitting challenged evidence, any such error is reviewed under the standard for nonconstitutional error. *Nguyen v. State*, 693 S.W.3d 732, 740 (Tex. App.—Houston [14th Dist.] 2024, no pet.) (citing *Snowden v. State*,

5

353 S.W.3d 815, 818 (Tex. Crim. App. 2011)). Nonconstitutional error is disregarded unless it affects a defendant's substantial rights. *Id.* (citing Tex. R. App. P. 44.2(b)). An error affects a defendant's substantial rights when it has a substantial and an injurious effect or influence on the jury's verdict. *Id.* (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). If the error has no influence or only a slight effect on the verdict, then it is harmless. *Id.* (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

When determining harm, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Id.* (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)). We also consider the jury instructions, the theories from the prosecution and the defense, closing arguments, and even voir dire, if it is material to the defendant's claim. *Id.* at 740–41.

### b. Relevant Record

We begin with Detective Bailey's testimony. Detective Bailey testified that the complainant had told Royal that Crump had done some very bad things to her in his trailer, which was in a residential backyard. The complainant told Royal that while she and her two siblings were sleeping in the trailer's living room, Crump told her that he wanted her to sleep with him in his bed, called her into his bedroom, and instructed her to undress, which she did. Then, according to the complainant, "[Crump] touched

6

her bad stuff where she pees with his bad stuff where he pees." The complainant said that she was lying on her back and described a burning feeling. The complainant added that while this was happening, Crump was talking about "nasty boys" who would take their clothes off too. The complainant told Royal that "she cried during the incident and that [Crump] told her to stop and shut up and then told her not to say anything[,] and if she did, [Crump said that] he would spank her." She described Crump's penis as hard. The complainant said that Crump had also touched her "butt where the poop comes from." The complainant said that she was five years old when this happened.

We next look at the complainant's testimony. The complainant was nine years old when she testified. She stated that Crump, her grandfather, lived in a trailer in his friend's backyard.

The complainant testified that on the night in question, she was five years old, and she, her brother, and her sister were spending the night at Crump's. Her brother slept on a sofa in the living room, and she and her sister slept in Crump's bed. According to the complainant, Crump told her sister that they were to take off their clothes. Her sister responded by going to her "hideout," which the complainant described as "a small area [on] half of the bed[,] . . . and there was like a step to go to

the -- like a mirror[ed] closet . . . – [and] this step was pretty big."[1] Her sister fell asleep once she was in her "hideout."

The complainant remained awake; at trial, she explained what happened next. She said that Crump first talked about how babies were made but then went further and proceeded to "show [her]" how they were made. The complainant related that Crump touched the inside of her private area and described the touching as painful. She said that Crump touched her inside area with his inside area and that his inside area felt hard. The complainant "told him to stop[,] and he didn't." She continued, "I don't know if he didn't hear me, but I told him to stop[,] and he didn't. And I . . . yelled[,] and . . . he stopped."

The complainant said that after Crump stopped, she got off the bed, grabbed her clothes, put them back on, and started to cry. She said that she told her siblings. Initially, she testified that Crump had not said anything to her, but then she described what happened after she told her sister: "[My sister] started to get angry[,] and she said, [']I really wanna do this to him.['] And I was like[,] ['D]on't because he . . . said don't tell anybody.['] And . . . she was like, [']Okay.[']" According to the complainant, she had to calm her sister down: "And I calmed her down with my stuffed animal[,]

---

[1]A photograph shows the bed parallel to a wall with a closet that has sliding mirror doors. The distance between the bed and the sliding mirror doors is roughly the width of a wide stairstep.

and . . . she started to calm down[,] and I slept with her, but like that area was . . . so small, I slept like off of the step."

The complainant said that the next morning, after she had showered, Crump touched her butt.

During cross-examination, the complainant acknowledged watching the video of her forensic interview before testifying and agreed that some of the things that she testified to were not the same as she had stated on the video. For example, in the video, she did not mention that her sister had been in the room. She also acknowledged that in the video, she said that she, her sister, and her brother had all been in the living room at first.

When asked about these inconsistencies, the complainant acknowledged that with time, she sometimes remembered things differently. The complainant further acknowledged that when she testified earlier (on direct examination) that she had told both her sister and her brother about the abuse, she was mistaken because she had told only her sister. When asked if Crump had called her into the bedroom that night, she responded, "I forgot."

The complainant's sister also testified. She said that on the night in question, she was sleeping on the couch in the living room and her brother was sleeping in the living room on a couch that folded out into a bed. She said that the complainant was in Crump's room and that at some point the complainant came out of his room and was crying. The complainant told her that Crump had done something bad to her but

9

that she could not say what it was. According to the complainant's sister, she was the one who asked the complainant to calm down and, to that end, told the complainant to "get with" her, after which she gave the complainant a big hug.

The jury also learned that this was not the first time that Crump had been accused of sexually assaulting a family member. Crump's son and daughter testified about an event that had happened decades earlier.

Crump's son testified that before 1999 his family lived in North Carolina, and in 1996, when he was around twelve years old, he looked in Crump's bedroom and saw Crump on top of one of his sisters on the waterbed. His sister was around eleven years old at that time, and she was telling Crump to stop because it hurt.

Crump's son related how, using a crayon, he wrote on a piece of paper that he had seen Crump having sex with his sister and placed the paper on the backdoor so that his stepmother, who was visiting a friend at the time, would see it when she returned home. Crump's son gave a statement to the police that same night.

The daughter in question also testified. She said that in 1996, when she was ten or eleven years old and living in North Carolina, Crump called her into his bedroom, and when she walked in, he was naked and masturbating on his waterbed. Crump then told her to take her clothes off and to get into bed on her back, which she did. Crump then climbed on top of her and inserted his penis into her vagina. She remembered crying because it hurt. After he ejaculated, he told her to go back to bed, which she did.

According to the daughter, her mother later woke her and another sibling up and told them to go to the car, and they then drove to meet an officer, who took a statement from her. She said Crump was arrested that same night. The daughter told the jury that she had not seen Crump again until appearing in court to testify in this case.

In addition to the son's and daughter's testimony about the 1996 event, the jury received evidence that Crump had been convicted of incest in North Carolina in 1997 for an offense committed in 1996.

### c. Application

We hold that any error was harmless for three reasons. First, the complainant's testimony was similar to Detective Bailey's in some respects. Second, in other respects, Detective Bailey's testimony was inconsistent with the complainant's testimony, but Crump leveraged those inconsistencies to attack the complainant's credibility, albeit unsuccessfully. And third, Crump had previously been convicted of incest, which cast the State's allegations in a more favorable light.

### i. Substantially similar evidence

When substantially similar evidence comes in elsewhere without objection, any error is harmless. *See Flores v. State*, 513 S.W.3d 146, 165 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Williams v. State*, 172 S.W.3d 730, 734 (Tex. App.—Fort Worth 2005, pet. ref'd). Both Detective Bailey and the complainant described Crump's act of

11

sexually assaulting her in his trailer when she was five years old. To that extent, any error in admitting Detective Bailey's testimony was harmless.

## ii. Inconsistencies between forensic interview and testimony

To the extent that Detective Bailey's and the complainant's testimony differed—something that Crump argues in his brief and that the record supports—we nevertheless conclude that any error was harmless. These discrepancies did not necessarily work in Crump's disfavor and—to the contrary—may have benefited him. Jurors are responsible for resolving conflicts in the testimony and for weighing the evidence. *Williams v. State*, 513 S.W.3d 619, 635 (Tex. App.—Fort Worth 2016, pet. ref'd). The contradictions between the complainant's testimony and her forensic interview—whether those contradictions were derived from Detective Bailey's testimony or the complainant's own admissions—provided Crump with a factual basis to question the complainant's reliability. Crump's cross-examination of the complainant and his closing argument bore this out.

When Crump cross-examined the complainant, he used the forensic interview to question her about prior inconsistent statements. *See* Tex. R. Evid. 613(a). Crump successfully got the complainant to admit that her trial testimony differed in some respects from the statements that she had given during the forensic interview. On this record, we cannot say that Crump would not have pursued this line of cross-examination if Detective Bailey had not testified.

12

Turning to closing arguments, the State relied on Detective Bailey's testimony for added detail. In contrast, Crump emphasized the differences between the forensic interview and the complainant's testimony at trial.

Thus, based on the cross-examination and the jury arguments, the forensic interview cut two ways—it provided additional details, but it also contradicted in some respects the complainant's testimony at trial and potentially undercut her credibility. The complainant's factual assertions were similar but not identical.

### iii. Extraneous offense

Detective Bailey's testimony was harmless for another reason. Ultimately, Detective Bailey was not the person whom the jury had to believe. The jury had to believe the complainant. And for reasons unrelated to Detective Bailey's testimony, other evidence made the complainant's allegations more believable—specifically, the evidence that Crump had previously sexually abused his own daughter when she was a child and had been convicted of incest.

### iv. Ruling

Assuming that the trial court erred by designating Detective Bailey as the outcry witness and improperly admitting hearsay testimony, we are not persuaded that the error affected Crump's substantial rights. *See* Tex. R. App. P. 44.2(b); *Nguyen*, 693 S.W.3d at 740. Crump has not shown that the error had a substantial and an injurious effect or influence on the jury's verdict. *Nguyen*, 693 S.W.3d at 740. Any error had no influence or only a slight effect on the verdict. *Id.*

13

We overrule Crump's issue.

### III. Conclusion

Having overruled Crump's sole issue, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 2, 2025