Richardson, J., delivered the opinion for a unanimous Court.
Appellant, Sandra Coy Briggs, pled no contest on January 12, 2012, to the offense of intoxication manslaughter of a peace *178 officer.[1] She claimed in a motion for new trial[2] that her plea was involuntary because case law decided after she pled would have changed her mind, and she would have exercised her right to a jury trial. The trial court denied Briggs's motion for new trial, but the Thirteenth Court of Appeals reversed the trial court's decision, finding that, "having the benefit of [the 2013 Missouri v. ] McNeely [opinion] and its progeny," Briggs's attorney, in 2012, "misrepresented the law to Briggs as it relates to the admissibility of her blood-draw evidence."[3]
We hold that the court of appeals erred. When a defendant waives the right to have a jury determine guilt or innocence and admits or does not contest guilt, the defendant does so under the law existing at the time of the plea. The fact that Briggs's attorney did not anticipate subsequent changes in the law does not impugn the truth or reliability of Briggs's plea.[4] We reverse the decision of the court of appeals and affirm the judgment of the trial court.
BACKGROUND
Sergio Antillon was an officer with the San Antonio Police Department. On October 14, 2010, at approximately 2:00 a.m., as he was driving his personal vehicle home after his shift, Sergio stopped on the right shoulder of the highway to assist a driver whose pickup truck had just collided with the guard rail. Both men were standing on the shoulder when Briggs's vehicle, traveling southbound, hit the rear corner of the pickup truck. The pickup truck then struck the two men standing. The pickup truck driver was thrown onto the grassy hill alongside the highway, and Officer Antillon was thrown up into the air and landed on the guardrail. Officer Antillon died from his injuries.
At the scene, responding officers detected on Briggs the odor of alcohol and slurred speech. When Briggs did not perform well on the field sobriety tests, she was placed under arrest for DWI. Briggs refused to give a breath or blood sample. She was taken to the police station for processing and advised that she would have to give a mandatory blood sample due to the fact that she was involved in an accident involving injury and/or death.[5] At that time, approximately two hours had passed since the accident. Briggs signed the refusal form and was taken to the police station infirmary. Although no warrant had been obtained, a nurse drew a sample of Briggs's blood at 5:15 a.m. on October 14, 2010. Her blood alcohol content was 0.14 g/dL.
On January 12, 2012, Briggs's jury trial began. After consulting with her attorney, Briggs entered a plea of no contest before the jury to the charge of intoxication manslaughter of a peace officer. She elected to *179 have the jury decide punishment.[6] After the punishment phase of the trial concluded, the jury found her guilty of intoxication manslaughter of a peace officer (as instructed by the trial court), assessed a forty-five year prison sentence, and made an affirmative finding that her vehicle was a deadly weapon.[7]
Briggs's Motion for New Trial
Represented by new counsel, Briggs filed a motion for new trial alleging (1) that her plea of no contest violated due process and was not made knowingly, intelligently, or voluntarily; and (2) a new trial should be granted in the interest of justice. In support of her motion for new trial, Briggs argued that the results of her blood draw were a determining factor in her decision to plead no contest to the intoxication manslaughter charge instead of exercising her right to a jury trial on guilt/innocence. Briggs claimed that in the year following her sentence, because "significant appellate opinions from the United States Supreme Court and Texas courts were issued concerning the constitutionality of warrantless blood draws," her plea has been rendered involuntary.[8] It was Briggs's position that the admissibility of her blood draw results, as governed by current case law, was misrepresented to her by her attorney at the time of her plea, causing her to waive her right to have a jury determine her guilt/innocence, and thus causing her to involuntarily and unknowingly enter her plea of no contest.
On February 18, 2015, the trial court conducted a hearing on the motion for new trial. Briggs's trial attorney testified at the hearing that, at the time of Briggs's plea in January of 2012, he had researched the mandatory blood draw provisions in Transportation Code sections 724.011, 724.012, and 724.013 and the case law interpreting them. As he understood the mandatory blood draw provisions at the time of Briggs's plea, because this accident involved serious bodily injury or death, Briggs had given "implied consent" that allowed the police to take a specimen of Briggs's blood without a warrant.[9] Trial counsel researched other ways of challenging the reliability and admissibility of the blood test results, but he ultimately concluded that the results would be admissible and damaging to Briggs's case, which is why he did not bother filing a motion to suppress. Thus, at the time of Briggs's plea, trial counsel believed that he "properly advised" Briggs of her rights under the law that existed at that time. Her *180 attorney also confirmed that Briggs was admonished by the trial court before she entered her plea of no contest.
When it was time for Briggs to testify at the motion for new trial hearing, the prosecutor elicited the following testimony from her on cross examination:
Q. Now, when you entered into your plea, your attorney advised you what the consequences would be for entering into that plea, correct?
A. Oh, do you mean - Yes, yes, he did.
Q. So when you chose not to fight the guilt/innocence phase of the trial, you're not telling the court today that you weren't aware of what you were doing when you chose not to fight that stage of the trial, correct?
A. Yes, I knew what I was doing.
Q. And isn't it true that part of the reason you chose to plead guilty during the guilt/innocence phase of the trial was for the purpose of trial strategy?
A. I don't understand, sir. Could you please repeat that?
Q. Didn't you discuss with your attorney the fact that by pleading guilty to the jury, you were taking some responsibility for what you did, and it might affect the jury assessing less punishment for you? Are you telling the court that you did not discuss that with your prior attorney?
A. Yes, sir, I did.
Q. And that's part of the reason that you chose to plead guilty; isn't that correct?
A. Well, now, you mean - Uh, yes, sir. Yes, sir.
Q. That's part of - I want to make sure we're clear on this point. That is part of the reason you chose to plead guilty, correct?
A. I don't understand what you're asking me, actually.
Q. Okay.
A. Are you - what exactly are you asking me?
Q. The first question I asked you was: Isn't it true that you pled guilty for the purpose of trial strategy? And then I explained the jury might assess less punishment if you take responsibility for what you did. And if I understood you correctly, you said that, yes, you did discuss that with your attorney?
A. Yes, sir. Yes, sir.
Q. And that's part of the reason that you chose to plead guilty to the jury; isn't that correct?
A. Yes, that's correct.
Q. It's not solely based on the blood evidence, was it?
A. Yes, it was based on blood evidence, yes, sir.
Q. Okay. I'm confused in what you're telling me, then. Are you saying it was only based on the blood evidence, or is it also to try to get the jury to assess less punishment against you?
A. The only reason that I did not go to trial was because we could not refute the blood evidence.
Q. So are you telling the Court there wasn't other evidence against you indicating that you were intoxicated?
A. There was, but not intoxicated. There was other evidence, yes, sir.
After the testimony, Briggs's appellate counsel argued in closing to the court that the blood evidence was the "most damaging" piece of evidence against Briggs, and that was the determining factor "on whether or not they were going to go to trial."
*181 The appellate counsel argued that Briggs's trial attorney "sought every possible way he could to discredit or keep the blood evidence from coming into a trial. And ultimately, when he could not come up with any feasible way to do that at that time, he advised her that this would be the best strategy for her with that evidence coming in." In response to Briggs's position, the State argued that Briggs's plea cannot be rendered involuntary based on after-the-fact developments in case law.
After closing arguments, the trial court judge asked the State if it had any evidence regarding whether there were exigent circumstances on the night of the accident that would have factored in to the decision to draw Briggs's blood sample without a warrant. The State then produced Sergeant Scotty Foulke to testify about whether there were exigent circumstances. Sergeant Foulke said that there were only three officers on duty that night, and he was already investigating an intoxication manslaughter case with a wrong-way driver. Sergeant Foulke described the accident scene as "a staggered arrival based on when we got finished on the other one." He was the first one to get there, then twenty to twenty-five minutes later Detective Holson got there, and after an hour Detective Doyle arrived. He assessed the conditions of the injured and made sure that Briggs had been checked out by the paramedics. Sergeant Foulke estimated that Briggs's blood sample was taken about three hours after the accident. He also testified that, had he sought to obtain a warrant before getting the blood sample, that probably would have taken an additional hour and a half. Sergeant Foulke was then asked why the arresting officer could not have obtained a warrant:
Q. Why would you have had to go down to the station instead of the officer who arrested the defendant?
A. They weren't trained in actual warrants and stuff like they are now. So it would have been a detective to actually type up the warrant, present it in front of the judge, get it signed, logged, and then proceed with the blood draw.
* * *
Q. Where would you have had to have gone to type out the warrant back on October 14th of 2010?
A. It would have been 214 West Nueva, Police Headquarters.
Q. Why the police headquarters and not the magistrate's office?
A. The system that we use currently, the laptops and stuff that we use in the DA's office there to type up the actual warrants, that wasn't in existence back then, sir. I would have been using a shell of my own to actually type up the warrant.
The trial court judge denied Briggs's motion for new trial and made the following findings and conclusions on the record:
I find that [Missouri v. ] McNeely can be applied retroactively to the defendant's case. However, when applying McNeely , I do not believe that McNeely affords relief for the defendant.
McNeely provided that the deterioration of blood evidence alone is not an exigent circumstance to obtain blood from a suspect without a warrant. McNeely requires a case-by-case analysis of the facts on the totality of the circumstances. McNeely did not prohibit warrantless searches in all circumstances.
Here, the facts show that the police unit dedicated to traffic fatalities was already involved in investigating an earlier fatality the same night this defendant caused her collision. The police relocated to defendant's crime scene and began their investigation. Due to the circumstances *182 normal to any collision scene, such as allowing emergency medical personnel to conduct their procedures, to include ensuring that the defendant did not need further medical care, the police were delayed in determining that it was the defendant's actions that caused the collision. At that point, nearly three hours had lapsed since the time of the collision.
This case was not a regular or normal driving while intoxicated case. It seems that the time period to obtain blood in a traffic stop resulting in a DWI arrest is closer to 1.3 hours. Here, it seems that the time was of the essence before the blood decayed. There were other factors, however.
There was testimony as to the Night CID, or Night Criminal Investigation Division, could have assisted the traffic unit in obtaining a warrant to draw the blood. Sergeant Foulke testified that he did not know the status of Night CID at the time and whether they were already engaged in their own investigations that night. Common sense would dictate that it would have taken longer to wait for a Night CID officer to appear and to have him or her be briefed on the situation in order for that officer to draft up a search warrant application.
In addition, Sergeant Foulke testified that to obtain a warrant would have added an additional 1.5 hours to obtaining blood evidence. Furthermore, the resources available at the time of the crime were different than they are now. The training or manpower for obtaining DWI warrants has, since the time of the crime, been improved, and the process is now streamlined under the "no refusal" program.
For instance, now police officers have laptop computers at their disposal to draft warrant applications on scene without returning to the police headquarters, as it would have been in the defendant's case at that time.
When looking at all the factors in determining whether the blood could have been drawn without a warrant and considering that no mention - no Motion to Suppress was filed, it appears that the application of McNeely does not afford the defendant relief under new trial procedures via a Motion for New Trial because I believe obtaining a warrant in this situation would significantly undermine the efficacy of this search, so the Motion for New Trial is denied.
On Direct Appeal
Briggs appealed the trial court's decision denying her motion for new trial. She raised three points of error:
(1) The trial court failed to rule on the issues presented;
(2) Briggs's plea was not voluntary because it was induced by a misrepresentation of the law; and
(3) The trial court's findings regarding exigent circumstances are not supported by the record.
The Thirteenth Court of Appeals sustained Briggs's first and second issues, reversed the trial court's judgment, and remanded the case for a new trial, holding that Briggs's plea was involuntary because she was given what turned out to be erroneous advice by her attorney.[10] The court of appeals arrived at this decision by first concluding that Missouri v. McNeely did not announce a new rule of law.[11] But, even if *183 it did announce a new rule of law, because Briggs's case was on direct appeal, it was not yet final, and because it was not yet final, the April 17, 2013, McNeely opinion and the cases decided since McNeely , addressing the constitutionality of warrantless blood draws, would apply retroactively.[12] The court of appeals concluded that the significance of McNeely being retroactive is that Briggs's attorney gave her misinformation: "Having the benefit of McNeely and its progeny, we conclude that [Briggs's trial attorney] misrepresented the law to Briggs as it relates to the admissibility of her blood-draw evidence."[13] In other words, it was held that Briggs's plea was involuntary because her lawyer failed to advise her that section 724.012 of the Texas Transportation Code could not mandate a warrantless blood draw absent exigent circumstances.[14] The court of appeals then reasoned that "[t]his erroneous information conveyed to Briggs by her trial counsel resulted in Briggs's plea of no contest being involuntary."[15] Thus, according to the court of appeals, since Briggs's motion for new trial challenged the voluntariness of her plea, not whether there were exigent circumstances present, the trial court did not make an implicit finding that Briggs's plea was voluntary, and in any event, such a factual finding would have been unreasonable and not supported by the record.[16] The court of appeals reversed the trial court's denial of Briggs's motion for new trial and remanded the case for a new trial. We granted the State's petition for discretionary review to determine whether the court of appeals erred in reversing the trial court's ruling.[17]
ANALYSIS
We review a trial judge's ruling on a motion for new trial under an abuse *184 of discretion standard.[18] "This is a deferential standard of review that requires appellate courts to view the evidence in the light most favorable to the trial court's ruling."[19] A trial court abuses its discretion only when no reasonable view of the record could support its ruling.[20] A trial court's ruling will be upheld if it is correct on any applicable legal theory, even if the trial court articulated an invalid basis.[21]
In this case, the trial court denied Briggs's motion for new trial. The trial court concluded that, although Missouri v. McNeely[22] applied retroactively to this case, the warrantless blood draw was valid because the exigency exception to the warrant requirement under the Fourth Amendment applied. We must note that, although the findings and conclusions made by the trial court on the record mention the fact that no motion to suppress was filed, that fact did not seem to play a key role in the trial court's decision. But we think it does play a key role because this case involved a no-contest plea regarding guilt/innocence, rather than a trial to the jury on guilt/innocence. Because there was no motion to suppress filed and denied by the trial court prior to the no-contest plea, this case is in a completely different procedural posture.[23]
The court of appeals did not address the substance of the trial court's ruling based on exigency, but it did agree that McNeely applied retroactively.[24] The court of appeals found McNeely and its progeny applicable to the issue of whether Briggs's lawyer misadvised Briggs regarding the admissibility of her warrantless blood draw. The court of appeals reversed the trial court's decision after concluding that Briggs's plea was involuntary based on misinformation from her lawyer-i.e., he did not tell Briggs that sections 724.011, 724.012, and 724.013 of the Transportation Code cannot authorize a warrantless blood draw absent exigent circumstances (or some other well-established exception to the Fourth Amendment warrant requirement).
As explained herein, we do not agree with the decision made by the court of appeals; nor do we agree with the trial court's reasoning, even though we do agree with the trial court's ruling. Rather, for the following three reasons, we hold that McNeely and its progeny have no *185 bearing on our analysis of whether Briggs's plea in 2012 was voluntary or involuntary: (1) this case involved a plea of no contest occurring in 2012, (2) the claim raised by Briggs is that her plea was involuntary at that time, and (3) there was no pretrial motion to suppress filed pertaining to whether the warrantless blood draw was valid.
The Admissibility of Warrantless Blood Draws in 2012-Beeman v. State and Its Progeny
When Briggs pled no contest in 2012, the Texas Transportation Code section 724.011 provided that a person arrested for driving while intoxicated "is deemed to have consented" to a taking of their blood or breath specimen.[25] This "implied consent" provision was limited by the terms of section 724.013, which provided that, if a person refused to submit to the taking of a blood or breath specimen, the specimen could not be taken except as provided by the "mandatory-blood-draw" provisions in section 724.012(b).[26] Section 724.012(b)(1) provided that, if a person was arrested under suspicion of driving while intoxicated, and that person refused to provide a blood or breath specimen voluntarily, a peace officer could require the taking of a blood or breath specimen of that person if there had been an accident, and as a direct result of the accident, a person has suffered serious bodily injury or death.[27]
In January of 2012, there were very few cases out of this Court interpreting these statutory provisions. Until November of 2014, when this Court decided State v. Villarreal ,[28] our most-often cited precedent interpreting the "implied consent" law is our 2002 opinion in Beeman v. State .[29] Although dicta , this Court observed in Beeman that:
The implied consent law does just that-it implies a suspect's consent to a search in certain instances. This is important when there is no search warrant, since it is another method of conducting a constitutionally valid search....
The implied consent law expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant. It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant.[30]
Intermediate appellate courts cited to Beeman as authority for holding that the "implied consent" statute ( section 724.011 ) served as an exception to the warrant requirement because each person who willfully operates a motor vehicle on Texas roads and highways impliedly consents to provide a specimen of his breath or blood if an officer reasonably believes that driver has caused death or serious bodily injury *186 to another as a result of operating a motor vehicle while intoxicated.[31]
2013-Missouri v. McNeely
The Supreme Court held in McNeely[32] that the natural metabolization of alcohol in the bloodstream did not present a per se exigency that would, on its own, fall under an exception to the warrant requirement.[33] Rather, said the Supreme Court, "exigency in this context must be determined case by case based on the totality of the circumstances."[34] In fact, the Supreme Court in McNeely acknowledged that "[a] variety of circumstances may give rise to an exigency sufficient to justify a warrantless search," where "there is compelling need for official action and no time to secure a warrant."[35] But if, "in those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so."[36]
However, even after McNeely , it was still somewhat unsettled in Texas whether *187 the implied-consent and mandatory-blood-draw provisions in sections 724.011, 724.012(b), and 724.013 provided exceptional statutory circumstances (in addition to the established Fourth Amendment warrant exceptions) justifying a warrantless blood draw. It may well have seemed as if they did when we decided Beeman , but it wasn't until 2014, when we decided State v. Villarreal ,[37] that the issue was resolved once and for all. In Villarreal , we held that "a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment."[38]
Since Villarreal , this Court has continued to recognize, as in Cole v. State , and in Weems v. State , that a warrantless search is per se unreasonable unless it falls within a well-recognized exception to the warrant requirement.[39] So the question we now turn to is, what bearing do all of these post-2013 cases have on the voluntariness of Briggs's 2012 no-contest plea? As discussed below, our answer is, under the facts of this case, they don't have any bearing at all.
The Voluntariness of Briggs's Plea
A plea of no contest or guilty must be free and voluntary.[40] When a defendant enters into a plea, attesting that she understands the nature of her plea and that it is being made knowingly and voluntarily, she has the burden on appeal to show that her plea was involuntary.[41] We have held that a plea based on erroneous information conveyed to the defendant by trial counsel may be involuntary.[42]
If Briggs's attorney's interpretation of the law, as that law existed at the time of Briggs's plea and as it was conveyed to Briggs prior to her decision to plead, was not erroneous, then under the facts of this case there is no basis upon which to hold that Briggs entered into her plea involuntarily.
In Brady v. U.S. ,[43] Brady made a similar challenge to the voluntariness of his plea. When Brady pled guilty to kidnapping in 1959, and was sentenced to thirty *188 years' imprisonment by the court, the kidnapping statute in existence at that time provided that a jury could assess punishment at death.[44] Nine years later, in United States v. Jackson ,[45] the Supreme Court held that that portion of the kidnapping statute was unconstitutional. Brady filed a motion attacking his sentence under 28 U.S.C. section 2255, claiming that his counsel's advice that he could receive the death penalty under section 1201(a) if he exercised his right to a jury trial was the reason he pled guilty, and since the law changed, his plea was no longer voluntary. The Supreme Court did not agree. It held that Brady's plea was not rendered involuntary based on "later judicial decisions" that changed the state of the law:
It is true that Brady's counsel advised him that § 1201(a) empowered the jury to impose the death penalty and that nine years later in United States v. Jackson , supra , the Court held that the jury had no such power as long as the judge could impose only a lesser penalty if trial was to the court or there was a plea of guilty. But these facts do not require us to set aside Brady's conviction.
... [J]udgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time.... [A]bsent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered.
The fact that Brady did not anticipate United States v. Jackson , supra , does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.[46]
*189 Similarly, in this case, the fact that Briggs's attorney did not anticipate McNeely and Villarreal does not "impugn the truth or reliability of [Briggs's] plea."[47]
Moreover, the Supreme Court in Brady was not persuaded that Brady "was so gripped by fear of the death penalty" that he "did not or could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty."[48] Despite Brady's assertions, the Supreme Court believed that strategy played an important role in Brady's decision to plead guilty:
The voluntariness of Brady's plea can be determined only by considering all of the relevant circumstances surrounding it. One of these circumstances was the possibility of a heavier sentence following a guilty verdict after a trial. It may be that Brady, faced with a strong case against him and recognizing that his chances for acquittal were slight, preferred to plead guilty and thus limit the penalty to life imprisonment rather than to elect a jury trial which could result in a death penalty. But even if we assume that Brady would not have pleaded guilty except for the death penalty provision of § 1201(a), this assumption merely identifies the penalty provision as a "but for" cause of his plea. That the statute caused the plea in this sense does not necessarily prove that the plea was coerced and invalid as an involuntary act.[49]
We can say the same about what transpired in the present case. Even though Briggs testified that the admissibility of the blood test was the only factor causing her to plead no contest, we must consider "all of the relevant circumstances" involved. Unlike a misdemeanor DWI, this was an intoxication manslaughter case involving the death of a police officer. Even though Officer Antillon had completed his shift, he was still in his uniform, driving home from work, when he stopped to assist a motorist who had been involved in a one-car accident. The facts of this case are tragic. When Briggs's vehicle hit the disabled pickup truck, the truck then struck both men, and they were thrown into the air. The pickup truck driver landed on the grassy hill by the highway, and Officer Antillon landed on the guardrail. His body was practically cut in half. There was evidence that Briggs smelled of alcohol, that she failed her field sobriety tests, and that she had evidence in her purse that could tie her to the bar where she had been that night. Even if Briggs's attorney had filed a motion to suppress and the blood draw test results had been excluded, we cannot conceive that the State would have dismissed the case against Briggs, or prosecuted it any less vigorously. Moreover, even Briggs's own appellate lawyer acknowledged in the motion-for-new-trial closing argument that pleading no contest and seeking punishment from the jury "would be the best strategy." Thus, to say that the admissibility of the blood test results caused her to plead no contest "does not necessarily prove that the plea was coerced and invalid as an involuntary act."[50]
Our recent decision in Ex Parte Palmberg[51] is instructive. In Palmberg , the defendant pled guilty to one count of possession of cocaine. At the time of his plea, the *190 State had not disclosed to the defendant that there was no substance left for the lab to test to confirm that the drug in Palmberg's possession at the time he was arrested was in fact cocaine. Palmberg filed a writ of habeas corpus claiming that his plea was involuntary because, had he known at the time of the plea that the State essentially had no laboratory-tested evidence to use against him at trial, he would not have pled guilty. We held, however, that "[a] guilty plea does not violate due process, ... even when the defendant enters it while operating under various misapprehensions about the nature or strength of the State's case against him[.]"[52] One example we gave of such a misapprehension was "failing to anticipate a change in the law."[53] We cited to McMann v. Richardson , observing that the Supreme Court "reasoned that when a 'defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk [of ] ordinary error in either his or his attorney's assessment of the law and facts. ' "[54] Thus, we held in Palmberg that, because a "defendant who enters a guilty plea does so with a proverbial roll of the dice,"[55] "the fact that his roll of the dice did not turn out as favorably as it might have had he proceeded to trial is not a ground for invalidating his plea."[56]
We therefore disagree with Briggs's assertion that her lawyer should have anticipated later judicial decisions. In fact, McNeely and its progeny may or may not have affected the admissibility of Briggs's blood draw results. Although not pertinent to today's decision, the trial court's finding of exigent circumstances was reasonable. Compared to Palmberg , the unknown "weakness" in the State's evidence in this case was much less detrimental to the State's case.
CONCLUSION
Following the Supreme Court decisions in Brady and McMann , and consistent with our own precedent in Palmberg , we hold that, under the facts of this case, Briggs's voluntary plea of no contest, intelligently made in light of the then-applicable law, cannot be invalidated because later judicial decisions indicate that the plea may have rested on a faulty premise. A knowing and intelligent guilty or no-contest plea does not require that all advice offered by the defendant's trial lawyer withstand retrospective examination in a post-conviction hearing.[57] When Briggs waived her right to have a jury determine her guilt or innocence and did not contest her guilt, "[she did] so under the law then *191 existing."[58] Although Briggs might have pleaded differently had the decisions in McNeely , Villarreal , Cole , and Weems[59] been rendered before 2012, she is bound by her plea, which was entered knowingly and voluntarily, on the reasonable advice of her attorney, which was based on then-existing law. The trial court's denial of Briggs's motion for new trial was correct.[60] We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Tex. Penal Code §§ 49.08, 49.09(b-2).

After she was sentenced, Briggs failed to file a timely notice of appeal. However, this Court granted Briggs habeas corpus relief in the form of an out-of-time appeal, and concluded that Briggs's case was not yet final. Ex parte Briggs , No. WR-82,035-01, 2014 WL 5369818, at *1 (Tex. Crim. App. Sept. 24, 2014) (per curiam) (not designated for publication). She was placed into a position where she could timely file her motion for new trial.

Briggs v. State , 536 S.W.3d 592, 604 (Tex. App. - Corpus Christi - Edinburg 2017) (citing Missouri v. McNeely , 569 U.S. 141, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013) ).

We note that no pretrial motion to suppress was ever filed, and there has never been any claim raised that Briggs's counsel was ineffective. The only issue raised by Briggs, and the only issue before us, is the voluntariness of Briggs's plea.

Tex. Transp. Code § 724.012(b)(1).

Although there was no written plea agreement, the State dismissed the intoxication assault charge stemming from the injuries received by the pickup truck driver.

Pursuant to Texas Penal Code section 49.09(b-2), an offense under section 49.08 (intoxication manslaughter) is a second-degree felony. But if the decedent was a peace officer who was discharging an official duty at the time of the offense, it is a first-degree felony.

Motion for New Trial at 2, Briggs , 536 S.W.3d 592 (Tex. App. - Corpus Christi - Edinburg 2017) ). Briggs asserts that, in light of the April 17, 2013, Supreme Court's decision in McNeely , and subsequent Texas cases following McNeely , the warrantless drawing of Briggs's blood was in violation of the Fourth Amendment, making such evidence inadmissible at trial. See McNeely , 569 U.S. at 141, 133 S.Ct. 1552 ; Aviles v. State , 385 S.W.3d 110, 116 (Tex. App.-San Antonio 2012), vacated, Aviles v. Texas , 571 U.S. 1119, 134 S.Ct. 902, 187 L.Ed.2d 767 (2014), on remand Aviles v. State , 443 S.W.3d 291 (Tex. App.-San Antonio 2014, pet. ref'd) ; Weems v. State , 434 S.W.3d 655, 660 (Tex. App.-San Antonio 2014), aff'd , Weems v. State , 493 S.W.3d 574 (Tex. Crim. App. 2016) ; State v. Villarreal , 475 S.W.3d 784 (Tex. Crim. App. 2014), cert. denied , Texas v. Villarreal , --- U.S. ----, 136 S.Ct. 2544, 195 L.Ed.2d 869 (2016).

See Tex. Transp. Code §§ 724.011, 724.013, and 724.012(b)(1).

Briggs, 536 S.W.3d at 604-05. The court of appeals did not address Briggs's third issue regarding whether there were exigent circumstances.

Briggs, 536 S.W.3d at 598-99 (finding that McNeely simply clarified the Supreme Court's 1966 holding in Schmerber v. California , 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) ).

Briggs , 536 S.W.3d at 600 (citing Griffith v. Kentucky , 479 U.S. 314, 326-28, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) ). As noted earlier, even though Briggs's conviction was considered "final" at one time due to her failure to timely file a notice of appeal, because she was granted an out-of-time appeal, she was put into the position to validly request a new trial and appeal her original conviction. See Griffith , 479 U.S. at 321 n.6, 326-27, 107 S.Ct. 708 ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."). We agree that, since this Court determined that the availability of Briggs's appeal had not been exhausted, her conviction is not yet final. Ex parte Briggs , 2014 WL 5369818, at *1.

Briggs , 536 S.W.3d at 604.

We point out, however, that Briggs has never raised a claim that her attorney was ineffective, and the court of appeals did not find that Briggs's trial attorney was ineffective. See Briggs , 536 S.W.3d at 608 ("[N]either the record nor [Briggs's] brief suggests any prosecutorial misrepresentation or ineffectiveness of defense counsel.") and 536 S.W.3d at 595 n.4 ("We also note that Briggs makes no express argument in this direct appeal that she received ineffective assistance of counsel.... We will not construe Briggs's voluntariness argument as an ineffective assistance of counsel claim.... [W]e limit our analysis and holding today to the voluntariness argument in Briggs's appeal.") (citing Ex parte Palmberg , 491 S.W.3d 804, 810 (Tex. Crim. App. 2016) ).

Briggs , 536 S.W.3d at 604 (citing Ex parte Barnaby , 475 S.W.3d 316, 322 n.8 (Tex. Crim. App. 2015) ).

Id. at 603 (citing Johnson v. State , 169 S.W.3d 223, 239 (Tex. Crim. App. 2005) ).

The specific issue we agreed to address is whether the court of appeals erred in holding that trial counsel's advice was a misrepresentation of the law that rendered Briggs's plea involuntary, when such advice was based on the controlling precedent that existed at the time such advice was given.

Burch v. State , 541 S.W.3d 816, 820 (Tex. Crim. App. 2017) (citing Riley v. State , 378 S.W.3d 453, 457 (Tex. Crim. App. 2012) ); State v. Herndon , 215 S.W.3d 901, 906-07 (Tex. Crim. App. 2007).

Burch , 541 S.W.3d at 820 ; Riley , 378 S.W.3d at 458.

Riley , 378 S.W.3d at 457.

Herndon , 215 S.W.3d at 905 n.4 ("This is the 'right ruling, wrong reason' doctrine."); Martinez v. State , 74 S.W.3d 19, 21 (Tex. Crim. App. 2002) (noting that the trial court's decision on a motion for new trial may be sustained on appeal if it is correct based upon "any applicable theory of law.").

569 U.S. 141, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013).

Justice Contreras's opinion dissenting to the court of appeals's majority correctly observed that,
[H]ad Briggs's trial counsel filed a motion to suppress the blood evidence, and had that motion been denied, we would certainly apply the tenets of McNeely in evaluating the merits of that ruling, because the case is on direct appeal. But that is not the situation we are presented with here. We are not reviewing a trial court's decision to suppress or not to suppress evidence, but rather, we are reviewing the trial court's determination that Briggs's plea was made voluntarily.
Briggs , 536 S.W.3d at 609 n.2 (Contreras, J., dissenting).

Briggs , 536 S.W.3d at 600.

Tex. Transp. Code § 724.011.

Id. at § 724.013.

Id. at § 724.012(b)(1).

475 S.W.3d 784, 814 n.15 (Tex. Crim. App. 2014) (recognizing that "Beeman has limited value with respect to the instant question whether a person's Fourth Amendment rights are violated when his blood is drawn over his objection pursuant to the 'implied consent' statute.").

86 S.W.3d 613 (Tex. Crim. App. 2002)

Beeman , 86 S.W.3d at 615-16 ; See also State v. Neesley , 239 S.W.3d 780, 784 (Tex. Crim. App. 2007) ("Section 724.012(a) of the Transportation Code permits a peace officer to take 'one or more specimens' whenever he has reasonable grounds to believe a DWI offense has occurred. And the DWI suspect 'is deemed to have consented' to the taking of 'one or more specimens' under Section 724.011 of the Transportation Code, the so-called 'implied consent' statute.").

Johnson v. State , No. 06-08-00044-CR, 2008 WL 4999117, at *3 (Tex. App. - Texarkana Nov. 26, 2008, pet. ref'd). The court in Johnson cited to Beeman , 86 S.W.3d at 615-16 as "discussing how implied-consent statute 'gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant.' "). See State v. Webre , 347 S.W.3d 381, 387 n.2 (Tex. App. - Austin 2011, no pet.) ("A person arrested for the offense of driving while intoxicated is deemed, by statute, to have consented to the taking of a blood specimen 'for analysis to determine the alcohol concentration.' " ... "The implied consent law provides a framework for drawing blood from driving-while-intoxicated defendants in the absence of a search warrant.) (citing to Beeman , 86 S.W.3d at 616 ) ); Comperry v. State , 375 S.W.3d 508, 512 (Tex. App. - Houston [14th Dist.] 2012, no pet.) (citing to Beeman , 86 S.W.3d at 616, as "recognizing that implied consent law 'gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant.' "); Myers v. State , No. 03-11-00078-CR, 2012 WL 3797599, at *7 (Tex. App. - Austin Aug. 28, 2012, no pet.) (noting that "the transportation code authorizes officers to take samples without search warrants in certain circumstances") (citing to Section 724.011"stating that under 'implied consent' statute, person arrested for suspicion of driving while intoxicated is 'deemed to have consented' to having samples of his blood or breath taken[.]"); Aviles , 385 S.W.3d at 115-16 ("This situation, as outlined in section 724.012, is one of the 'circumstances' the Texas Court of Criminal Appeals has held where blood may be drawn without a search warrant. Thus, the warrantless seizure of Aviles's blood was conducted according to the prescriptions of the Transportation Code, and without violating Aviles's Fourth Amendment rights.") (citing Beeman , 86 S.W.3d at 616 ); State v. Flores , 392 S.W.3d 229, 233 (Tex. App. - San Antonio 2012, pet. ref'd) (citing Beeman , 86 S.W.3d at 616, as authority that officers are permitted under section 724.011"to draw blood in certain limited circumstances even without a search warrant."), rev'd , State v. Flores , No. 04-13-00754-CR, 2014 WL 7183481 (Tex. App. - San Antonio Dec. 17, 2014, pet. ref'd) ; Whitaker v. State , No. 05-12-01116, 2013 WL 5969560, *3 (Tex. App. - Dallas Nov. 7, 2013, no pet.) (citing to Beeman , 86 S.W.3d at 616, as recognizing that implied consent law allows officer to draw blood in certain limited circumstances without a warrant).

569 U.S. 141, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013).

Id. at 144.

Id.

Id. at 148 (citing Michigan v. Tyler , 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) ); See also Schmerber , 384 U.S. at 770, 86 S.Ct. 1826 (where time had to be taken to bring the accused to a hospital and to investigate the scene of an accident, there was no time to secure a warrant, and officer reasonably believed that he was confronted with an emergency).

McNeely , 569 U.S. at 152, 133 S.Ct. 1552.

475 S.W.3d 784 (Tex. Crim. App. 2014).

Id. at 815.

See Cole v. State , 490 S.W.3d 918, 925-26 (Tex. Crim. App. 2016) (Based upon the accident's severity, the lack of available law enforcement personnel, and the "logistical obstacles of securing a warrant," law enforcement had a reasonable belief "that obtaining a warrant in this case would have significantly undermined the efficacy of searching Cole's blood."). Cf Weems v. State , 493 S.W.3d 574, 580-81 (Tex. Crim. App. 2016) (holding that, under the totality of the circumstances, the warrantless blood draw was not justified by exigent circumstances in that case).

Tex. Code Crim. Proc . art. 26.13(b)

Martinez v. State , 981 S.W.2d 195, 197 (Tex. Crim. App. 1998).

Ex parte Moussazedeh , 361 S.W.3d 684, 688, 690-91 (Tex. Crim. App. 2012) (holding that, (1) counsel's misinformation to defendant as to his parole eligibility constituted deficient performance, (2) counsel's error prejudiced defendant, and (3) therefore counsel was ineffective, making the defendant's plea involuntary). See also Barnaby , 475 S.W.3d at 322 (noting that "[m]isrepresentations that may cause a plea to be involuntary can come from" defense counsel, the trial court, or the State) (citing, inter alia , Ex party Griffin , 679 S.W.2d 15, 18 (Tex. Crim. App. 1984) ; Ex parte Williams , 704 S.W.2d 773 (Tex. Crim. App. 1986) ; and McGuire v. State , 617 S.W.2d 259, 261 (Tex. Crim. App. 1981) ).

397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

18 U.S.C. § 1201(a).

390 U.S. 570, 572, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

Brady , 397 U.S. at 756-57, 90 S.Ct. 1463. See also McMann v. Richardson , 397 U.S. 759, 770-71, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ("That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.... [A] defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession."); United States v. Ruiz , 536 U.S. 622, 630-31, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) ("[T]his Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor.") (citing Brady , 397 U.S. at 757, 90 S.Ct. 1463 ; McMann , 397 U.S. at 770, 90 S.Ct. 1441 ).

Brady , 397 U.S. at 757, 90 S.Ct. 1463.

Id. at 750.

Id. at 749-750 (citations omitted).

Id. at 750.

Ex parte Palmberg , 491 S.W.3d 804, 810 (Tex. Crim. App. 2016).

Palmberg , 491 S.W.3d at 807.

Id.

Id.case-ids="6794984" index="117" url="https://cite.case.law/sw3d/491/804/#p810"> at 808 (emphasis in original) (citing McMann , 397 U.S. at 774, 90 S.Ct. 1441 ).

Palmberg , 491 S.W.3d at 809.

Id. at 810. See also Ex parte Chandler , 182 S.W.3d 350, 359 (Tex. Crim. App. 2005) ("Legal advice which only later proves to be incorrect does not normally fall below the objective standard of reasonableness under Strickland . ")(citing Smith v. Singletary , 170 F.3d 1051, 1054 (11th Cir. 1999) ); Ex parte Welch , 981 S.W.2d 183, 184 (Tex. Crim. App. 1998).

See Manzo Gonzales v. State , No. 04-98-00524, 1999 WL 191583, at *3 n.1 (Tex. App. - San Antonio April 7, 1999) (first citing McMann , at 770-71, 90 S.Ct. 1441 ) ("A court, in retrospect, cannot consider that a guilty plea was unintelligently entered where counsel's advice remained in the range of competence.") (then citing Mitchell v. State , 762 S.W.2d 916, 925 (Tex. App. - San Antonio 1988, pet. ref'd) ) ("Moreover, counsel's advice does not have to be perfect, so long as it is reasonably competent to permit the accused to make an informed and conscious decision.").

McMann , 397 U.S. at 774, 90 S.Ct. 1441.

569 U.S. 141, 133 S.Ct. 1552, 185 L.Ed.2d 696 ; 475 S.W.3d 784 ; 490 S.W.3d 918 ; 493 S.W.3d 574.

See Martinez , 74 S.W.3d at 21.