# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00527-CR

**Joe Anthony Robert Sandoval, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 428TH DISTRICT COURT OF HAYS COUNTY
### NO. CR-19-0095-D, THE HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Joe Anthony Robert Sandoval appeals from his conviction for the first-degree felony offense of murder. *See* Tex. Penal Code § 19.02(c). In his sole issue on appeal, appellant contends that his guilty plea was not entered knowingly and voluntarily and, therefore, that the trial court erred in denying his request to withdraw his guilty plea. For the following reasons, we affirm the trial court's judgment of conviction.

## BACKGROUND[1]

At a hearing on April 2, 2019, prior to a scheduled jury trial the following Monday, the parties reported to the trial court that they had reached an agreement for an open plea of guilty with the right to appeal, and the plea bargain agreement was admitted as an exhibit

---

[1] Because it is unnecessary to the disposition of appellant's issue on appeal, we do not recite the underlying facts surrounding the murder that formed the basis of the State's charge against appellant or the evidence that was admitted during the sentencing hearing. *See* Tex. R. App. P. 47.1, .4.

without objection. The exhibit included the trial court's written admonishments to appellant and his written waiver of rights and stipulation of evidence for a plea of guilty. Appellant signed the plea bargain agreement and represented in writing that he was "mentally competent now and was sane at the time this offense was committed" and that he understood the nature of the charges against him and the consequences of his plea:

> I understand the nature of the charges against me, and I further understand the foregoing admonishments by the Court, and I further understand the consequences of my plea herein, and I agree that the evidence in this case may be stipulated and waive the appearance, confrontation, and cross-examination of the witnesses, and further consent to the introduction of testimony by affidavits, written statements of witnesses, and other documentary evidence in support of the judgment of the Court, and further state that I fully understand such stipulation and freely and voluntarily make such waiver. Under article 1.14, Code of Criminal Procedure, I give up all rights given to me by law, whether of form, substance or procedure. I hereby freely, knowingly and voluntarily waive any Constitutional or statutory protections and privileges against self-incrimination which may apply in both the determination of guilt and the assessment of punishment in this case. I further admit and stipulate that each and every allegation contained in the indictment herein is true and correct.

Appellant further represented that it was his "desire to enter a plea of guilty" and that he was entering his plea "freely and voluntarily, and only because [he was] guilty." Appellant's counsel also represented in writing that he had read and explained the admonishments and waivers and consequences of entering a guilty plea to appellant and that he believed appellant was mentally competent to stand trial and understood his rights and options available to him and the consequences of waiving said rights. Counsel further represented that appellant's plea was "entered freely, knowingly, and voluntarily."

During the April hearing, the trial court questioned appellant about his understanding of a prior offer by the State of forty years' confinement, and he initially answered "[k]ind of" and explained that he "never knew that that's what the offer was, [he] just knew [he]

2

waived a cap back in February." After conferring with counsel, appellant answered "Yes" when asked if he now understood that the State at a previous time had offered 40 years and that he had rejected the offer.

Concerning appellant's decision to plead guilty, counsel advised the trial court that "we've gone back and forth on" whether appellant wanted a trial, but after counsel further conferred with appellant, counsel advised the trial court that appellant had decided to enter a guilty plea, and appellant testified that he had agreed to plead guilty with the right to appeal. Before appellant initially entered his plea of guilty, the trial court properly admonished appellant. *See* Tex. Code Crim. Proc. art. 26.13 (requiring court to admonish defendant concerning consequences of pleading guilty, including range of punishment, before accepting guilty plea).

Observing that appellant had "hesitated a moment" when he initially entered his plea, the trial court asked appellant if there was a reason for the hesitation. After appellant answered that there was, the trial court asked him if he wanted to proceed with a guilty plea or confer with counsel again. Appellant answered to "[j]ust proceed with what we've got going on." The trial court then continued questioning appellant about his plea:

Trial Court: Are you pleading guilty to the charge of Murder, the first degree felony—

Appellant: Yes.

Trial Court: —because you're guilty of the charge of Murder, the first degree felony?

Appellant: Yes.

Trial Court: And do you have any hesitation in telling the Court that you're guilty of that charge?

Appellant: No.

3

The trial court also asked appellant about his background, and appellant stated that he had attended high school through the eleventh grade.

Concerning appellant's understanding of the proceeding and his guilty plea, appellant's counsel advised the trial court that the State's psychologists had evaluated appellant to be sane and competent to stand trial, and appellant answered additional questions from the trial court about his understanding of the plea agreement that he signed, the rights that he was giving up, the applicable punishment range, and his "wish to continue with [his] plea of guilty." The trial court found appellant's plea to be "freely and voluntarily given" and the evidence of guilt substantiated, accepted the guilty plea, and took the case under advisement subject to a presentence investigation report. Appellant's counsel then asked the trial court to allow him to question appellant "to go over it one more time," and appellant answered counsel's questions confirming his understanding of the proceeding and the consequences of his guilty plea. The trial court then reset the case for a sentencing hearing on May 22.

On May 15, appellant filed a motion for new trial and motion in arrest of judgment seeking to withdraw his guilty plea. The motion was supported by an affidavit of appellant's counsel who averred that he had received a letter from appellant dated May 9 in which appellant communicated that he wished to withdraw his plea and that "he was confused as to the nature of the plea agreement." The trial court considered the motion on May 22 at the beginning of the sentencing hearing. The trial court took judicial notice of its entire file, which included June 2018 psychological evaluations of appellant, and admitted as exhibits appellant's May 9 letter to his counsel and a 2004 psychological intake assessment from the Texas Youth

4

Commission (TYC) concerning appellant when he was a teenager.[2]  In his letter to counsel, appellant told counsel that he did not "even remember telling [counsel]" that he "was not taking 15-40," mistakenly referred to a "30 year cap," and stated that he did not want the judge to sentence him, that he was "confused on what to do," and that he "want[ed] to go to trial with [counsel] being [his] attorney."

The 2004 TYC assessment showed that appellant's full scale IQ was "71 (Borderline intelligence range)."  It also included a 2003 psychological evaluation of appellant reflecting that his "intermediate memory seemed below average in quality" and that his full scale IQ of 71 was "within range of Mild Mental Retardation."  The psychologist who completed the June 2018 evaluations also found that appellant's "recent memory was poor," but she found that appellant was competent to stand trial, that he had demonstrated sufficient ability to "engage in a reasoned choice of legal strategies and options" and "to discuss the potential outcomes of his legal case," that he did not "exhibit any psychiatric symptoms that would impair his ability to engage with counsel in a reasonable and rational manner," and that his "symptoms of mental illness" were "effectively managed with psychotropic medication."

In his argument to the trial court during the May 2019 hearing, appellant's counsel confirmed that the request to withdraw appellant's plea was within the trial court's discretion but represented to the trial court that "[f]rom the outset in this case, [he'd] had some concerns about [appellant's] mental state" and that appellant "was suffering under a major psychological condition; Major Depression Disorder."  Counsel also referred the court to appellant's "long history of mental illness" and his reported IQ and below-average intermediate memory.  Counsel stated that he did not believe that appellant was incompetent or insane but

---

[2]  In May 2019, appellant was 30 years old.

5

now believed that: (i) appellant's plea was not knowingly made, (ii) appellant did not have the "capability to knowingly understand, even though he said that he did," (iii) appellant "did not completely grasp the nature of what he was doing," (iv) appellant "forgot" "some things" that counsel told him, and (v) appellant did not completely understand or fully appreciate his plea.

The trial court denied appellant's request to withdraw his guilty plea and moved forward with the sentencing hearing. At the conclusion of the hearing, the trial court sentenced appellant to thirty-seven years' confinement. This appeal followed.

## ANALYSIS

In his sole issue, appellant contends that the trial court erred when it denied his request to withdraw his guilty plea because he did not enter the plea knowingly and voluntarily.

### Standard of Review and Applicable Law

A defendant may withdraw his plea as a matter of right until judgment is pronounced or the trial court takes the case under advisement. *Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. 1979); *Lawal v. State*, 368 S.W.3d 876, 882 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Taplin v. State*, 78 S.W.3d 459, 461 (Tex. App.—Austin 2001, no pet.). If the request to withdraw comes after the trial court takes the case under advisement, which is the case here, it is within the trial court's sound discretion whether to allow withdrawal of the plea. *See Jackson*, 590 S.W.2d at 515; *Saldana v. State*, 150 S.W.3d 486, 490–91 (Tex. App.—Austin 2004, no pet.); *Taplin*, 78 S.W.3d at 461; *see also Lawal*, 368 S.W.3d at 882 (explaining that case has been taken under advisement after trial court admonishes defendant, receives plea and evidence, and passes case for pre-sentence investigation). "A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement," *Gonzales v. State*,

6

544 S.W.3d 363, 370 (Tex. Crim. App. 2018), that is, when it acts arbitrarily and unreasonably and without reference to guiding rules and principles, *Saldana*, 150 S.W.3d at 491.

"[A] guilty plea must be entered knowingly and voluntarily." *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014); *see* Tex. Code Crim. Proc. art. 26.13(b) (requiring defendant to be mentally competent, and plea to be made freely and voluntarily before trial court accepts guilty plea); *Smith v. State*, 609 S.W.3d 351, 352–53 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (observing that guilty plea must be entered into freely and voluntarily (citing *Houston v. State*, 201 S.W.3d 212, 217 (Tex. App.—Houston [14th Dist.] 2006, no pet.))); *see also Brady v. United States*, 397 U.S. 742, 748 (1970) (explaining in context of guilty plea that waivers of constitutional rights "must be voluntary [and] knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences"). For a plea to be voluntary, "the defendant must have 'sufficient awareness of the relevant circumstances.'" *Ex parte Mable*, 443 S.W.3d at 131 (quoting *Brady*, 397 U.S. at 748). "The standard is whether the plea is a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* (citing *Parke v. Raley*, 506 U.S. 20, 29 (1992)).

"A trial court's proper admonishment of a defendant before a guilty plea is entered creates a prima facie showing that the plea was both knowing and voluntary." *Smith*, 609 S.W.3d at 353 (citing *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998)). A defendant who enters a plea attesting that he "understands the nature of [his] plea and that it is being made knowingly and voluntarily," as appellant did here, bears the burden on appeal to show that his plea was involuntary. *Briggs v. State*, 560 S.W.3d 176, 187 (Tex. Crim. App. 2018); *see Martinez*, 981 S.W.2d at 197 (explaining that defendant who was properly admonished has burden to demonstrate that his plea was involuntary, that he did not fully

7

understand consequences of his plea such that he suffered harm); *see also Kirven v. State*, No. 03-18-00756-CR, 2020 WL 2048256, at *1 (Tex. App.—Austin Apr. 29, 2020, no pet.) (mem. op., not designated for publication). In determining the voluntariness of a plea, we examine the entire record. *Briggs*, 560 S.W.3d at 189.

**Did the trial court abuse its discretion in denying appellant's request to withdraw his plea?**

As support for his position that the trial court should have granted his request to withdraw his guilty plea, appellant argues that the trial court "failed to consider that [his] mental illness, intellectual disabilities and/or his memory deficit compromised his ability to enter a knowing and voluntary plea of guilty in accordance with state and federal constitutional standards." Appellant relies on his own testimony and his letter to counsel regarding the State's plea offer that he rejected, his "insistence on the right to appeal," his hesitancy in admitting guilt during the April hearing, the 2004 TYC psychological intake assessment, and counsel's statements during the May hearing about his belief that appellant lacked capability to knowingly understand the proceeding and his guilty plea. During the April hearing, when asked if he understood the State's prior plea offer of forty years, appellant responded "[k]ind of" and that he did not know that was the offer but knew he had "waived a cap." In the May 9 letter to his counsel, he incorrectly referred to a 30 year cap and stated that he did not remember telling counsel that he "was not taking 15-40." The 2004 TYC psychological intake assessment reflected that when he was a teenager, appellant's full scale IQ was "71 (Borderline intelligence range)" and the 2003 psychological evaluation reflected that appellant's "intermediate memory seemed below average in quality."

8

In making its determination to deny appellant's request to withdraw his guilty plea, however, the trial court reasonably could have considered and credited the psychologist's findings in the June 2018 psychological evaluations that appellant had sufficient ability to "engage in a reasoned choice of legal strategies and options" and "to discuss the potential outcomes of his legal case," that he did not "exhibit any psychiatric symptoms that would impair his ability to engage with counsel in a reasonable and rational manner," and that appellant's symptoms of mental illness were effectively being managed with medication. The trial court also could have considered appellant's testimony during the April hearing. The record reflects that the trial court accurately and thoroughly admonished appellant about the consequences of pleading guilty, that counsel conferred with appellant when appellant showed hesitation to proceed, that the trial court and counsel questioned appellant about his understanding of the consequences, including the applicable punishment range, and that appellant answered the questions appropriately and confirmed his understanding and "wish to continue with [his] plea of guilty." The trial court also could have reasonably inferred from appellant's letter to counsel that appellant had understood the consequences of his guilty plea, including that the trial court would be sentencing him and that he had waived his right to a jury trial.

Considering the entire record, we cannot conclude that appellant has demonstrated that the trial court abused its discretion in denying appellant's request to withdraw his guilty plea. *See Briggs*, 560 S.W.3d at 187, 189; *Gonzales*, 544 S.W.3d at 370; *Saldana*, 150 S.W.3d at 491; *see also Smith*, 609 S.W.3d at 354–55 (concluding that trial court did not abuse its discretion in denying request to withdraw plea of guilty where psychiatrist in competency report observed that defendant "appeared to suffer from 'Unspecified Intellectual Disability' and 'Schizophreniform Disorder' and possessed a 'low average IQ'" but determined

that he "understood the charges and the range of punishment and was capable of engaging in his defense"); *Espinoza v. State*, No. 03-02-00654-CR, 2003 WL 21466938, at *1 (Tex. App.—Austin June 26, 2003, pet. ref'd) (mem. op., not designated for publication) (holding that trial court did not abuse discretion in denying defendant's request to withdraw guilty plea that was made after case was taken under advisement where "record from the hearing contradict[ed] [his] contention that he did not know what he was doing when he pleaded guilty").  Thus, we overrule his issue.

## CONCLUSION

Having overruled appellant's issue, we affirm the trial court's judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed:   July 22, 2021

Do Not Publish