

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00024-CR

DAVID MICHAEL LOGAN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 76th District Court
Morris County, Texas
Trial Court No. 12,541CR

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

David Michael Logan pled guilty to aggravated assault with a deadly weapon, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02 (Supp.). Pursuant to a plea bargain with the State, the trial court placed him on deferred adjudication community supervision for eight years. The terms and conditions of Logan's community supervision required him to "attend and successfully complete a term of confinement and treatment in a substance abuse felony punishment facility for a term of not less than ninety (90) days or more than one (1) year," among other things. The State alleged that Logan failed to comply with that condition of his community supervision and, as a result, filed a motion to adjudicate Logan's guilt. Logan pled true to the State's allegation. As a result, the trial court adjudicated Logan's guilt and sentenced him to twenty years' imprisonment.

On appeal, Logan argues that the trial court erred by denying his motion for new trial, in which he argued that the prosector's improper closing arguments violated his constitutional rights to confrontation and due process. We find no abuse of discretion in the trial court's decision to overrule Logan's motion for new trial. As a result, we affirm the trial court's judgment.

I.      **Factual Background**

At the adjudication hearing, Fomika Haskins, the chief jailer for the Morris County Sheriff's Office, testified that Logan did not successfully complete substance abuse felony punishment. According to Haskins, Logan had "outbursts where he kick[ed] the doors," screamed, yelled, and cussed at jailers, wrote on cell walls with feces, and "hoard[ed] his urine

2

and feces to throw on the jailers." Numerous incident reports were admitted without objection, including one that shows Logan threatened to kill an inmate after a fight. Another incident report shows that Logan "THREATENED TO INFLICT HARM ON HIS SISTER, BROTHER, JUDGE AND LAWYE[R] IN THAT SAID INMATE STATED THAT WHEN HE GO[ES] BACK TO COUNTY HE WAS GOING TO KILL THESE PEOPLE FOR LYING ON HIM."

Evidence admitted without objection shows that the underlying charge occurred after Logan's mother, Nancy Leflett, had asked Sheriff Jack Martin to issue a criminal trespass warning to Logan because he "was on [p]ain pills and [was] coming to terroriz[e] her." Upon receiving the warning, Logan became "mad," called Leflett to yell at her, and was told by Leflett not to come to her home. The underlying offense occurred when Logan failed to heed Leflett's warning, broke into her home with a machete and tire iron, and used Leftlett's own gun to fire at least four rounds during the incident.

During his interview with law enforcement, James Ennis, Logan's brother-in-law, said that Leflett had called him for help because she thought Logan "might be coming over." Logan arrived before Ennis, and Leflett called the police as Logan "started knocking out her windows with" the tire iron. When Ennis arrived at Leflett's home, he saw Logan "coming out the front door with the tire iron." Ennis said that he yelled at Logan, who "started running at him with the tire iron." By that time, Leflett had escaped "out the back door. . . while [Logan] was inside tearing up her house." According to Ennis, Logan "went to his vehicle and got a machete and went around back of the house."

3

Ennis found Leflett and remained with her until police arrived. Officers who arrived at the scene heard gunshots fired by Logan in the bedroom and through the front window. Leflett testified that the gun Logan fired belonged to her and came from "the closet inside her master bathroom." Leflett believed that Logan "was high and took her pain medicine." Logan eventually surrendered to the police. Leflett testified that Logan had no violent incidents before his arrest for the underlying charge but said that Logan had a "substance abuse problem."

At closing, the State made the following argument, "Mr. Logan's on felony probation here in front of your court for a very serious matter, all of them discharging firearms with family members, elderly family members. . . . There are individuals in Mr. Logan's family that are concerned about their safety, their mother's safety." Logan failed to object to the prosecutor's allegedly improper argument.

During sentencing, Logan made statements like, "If I would have saw somebody with a firearm," "they would have got smoked." The trial court referred to Logan's statement and said it was one of the reasons why Logan was sentenced to twenty years' imprisonment. Logan responded to the trial court by saying, "So you think ten more years is going to keep me from killing somebody?" Logan continued by saying, "I'll be ready for this shit next time." He further stated, "I didn't . . . have no firearm . . . , man. If I did, I would have smoked them. The whole shit would be sprayed."

Logan filed a motion for new trial arguing that the prosecutor's comments were improper because Logan "had discharged his mother's handgun when he was alone in an empty house, causing only property damage, *not in the presence of family members*." Logan also argued that

4

his confrontation and due process rights were violated since none of his family members, except for Leflett, testified at the adjudication hearing.

The trial court held a hearing on Logan's motion for new trial. After arguments were made by both sides, the trial court stated that it was "very well aware that arguments made by counsel are not evidence and may not be considered" by the trial court in pronouncing Logan's sentence. Because "the statements made by the prosecutor did not influence the Court in its decision," the trial court denied the motion for new trial.

## II. Standard of Review

"[A] trial court's ruling on a motion for new trial will only be reversed for an abuse of discretion." *Najar v. State*, 618 S.W.3d 366, 371 (Tex. Crim. App. 2021). Because "the trial court is the exclusive judge of the credibility of the evidence," we will uphold its decision unless "it is arbitrary or unsupported by any reasonable view of the evidence." *Id.* at 372.

"A trial court abuses its discretion only when no reasonable view of the record could support its ruling." *Briggs v. State*, 560 S.W.3d 176, 184 (Tex. Crim. App. 2018). "A trial court's ruling will be upheld if it is correct on any applicable legal theory . . . ." *Id.* "When deciding whether a trial court erred in granting a new-trial motion, we . . . give almost total deference to the court's findings of historical fact." *State v. Gutierrez*, 541 S.W.3d 91, 98 (Tex. Crim. App. 2017).

### III. Overruling the Motion for New Trial Was Not an Abuse of Discretion

In his sole point of error, Logan complains of the prosecutor's closing argument, but the record shows that Logan lodged no objection to it at the adjudication hearing.[1] The State argues that the trial court properly overruled Logan's motion for new trial because he failed to timely preserve the error. We agree.

"[A]ll errors—even constitutional errors—may be forfeited on appeal if an appellant failed to object at trial." *Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014). The Texas Court of Criminal Appeals has explained that the rules of error preservation, which require a timely objection, apply to improper closing arguments and that a "defendant must object and pursue his objection to an adverse ruling . . . to complain on appeal about the argument." *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018) (citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App 1996)) (overruling appellate court's decision that found the improper jury argument was timely raised in a motion for new trial); *see* TEX. R. APP. P. 33.1(a). "A defendant must object at the earliest opportunity to prevent waiver of an issue on appeal." *Owens v. State*, 549 S.W.3d 735, 744 (Tex. App.—Austin 2017, pet. ref'd) (citing *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014)). "Even incurably improper . . . argument is forfeitable." *Hernandez*, 538 S.W.3d at 623. Accordingly, "[a] defendant forfeits his complaint about improper . . . argument if he fails to object each time such argument is made." *Owens*, 549 S.W.3d at 744 (citing *Valdez v. State*, 2 S.W.3d 518, 521–22 (Tex. App.—Houston [14th Dist.]

---

[1]As have our sister courts, we "[a]ssum[e] without deciding that the same rules that restrict jury argument apply to a bench trial on punishment." *Garcia v. State*, No. 13-15-00508-CR, 2016 WL 4040201, at *5 (Tex. App.—Corpus Christi–Edinburg July 28, 2016, pet. ref'd) (mem. op., not designated for publication); *see Price v. State*, No. 07-22-00236-CR, 2022 WL 17990326, at *3 (Tex. App.—Amarillo Dec. 29, 2022, pet. ref'd) (mem. op., not designated for publication).

1999, pet. ref'd)). Since Logan failed to lodge any objection to the prosecutor's argument at the adjudication hearing, the trial court did not abuse its discretion by overruling the motion for new trial.

Moreover, "[t]he harmless-error rule . . . protects the criminal-justice system from unwarranted or undeserved reversals for improper closing arguments." *Jacobson v. State*, 398 S.W.3d 195, 204 (Tex. Crim. App. 2013). Accordingly, "[t]rial courts should not grant a new trial if the defendant's substantial rights were not affected." *State v. Herndon*, 215 S.W.3d 901, 908 (Tex. Crim. App. 2007). Here, the trial court specifically stated on the record that it knew that the prosecutor's arguments were not evidence and that it did not consider the closing argument in assessing Logan's sentence. Since Logan suffered no harm from the prosecutor's statements, the trial court did not abuse its discretion by overruling Logan's motion for new trial.

## IV. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     July 30, 2025
Date Decided:       September 5, 2025

Do Not Publish